IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 108,062

STATE OF KANSAS,
*Appellee*,

v.

DAVIN R. SPRAGUE,
*Appellant*.

SYLLABUS BY THE COURT

1.

When a defendant is charged with a homicide in the death of one person, the facts cannot, under any circumstances, give rise to multiple counts of the charged crime and thus do not support a multiple acts appellate challenge.

2.

The summary denial of a motion arguing ineffective assistance of counsel is reviewed de novo, requiring the appellate court to determine whether the motions, files, and records of the case conclusively show that the movant is entitled to no relief.

3.

It is error for a prosecutor to tell the jury his or her personal belief as to the reliability or credibility of testimony given at trial.

4.

The formal corpus delicti rule requires the State to make a prima facie showing of the corpus delicti independent of any extrajudicial admissions or confessions of a

1

defendant. The evidentiary threshold for making the required prima facie showing is slight and may consist entirely of circumstantial evidence.

5.

Under the facts of this case, the warrant authorizing the search of the defendant's home was sufficient in scope to authorize law enforcement's search of the defendant's outbuilding.

6.

Kansas' statutory procedure for imposing a hard 50 sentence as provided in K.S.A. 21-4635 violates the Sixth Amendment to the United States Constitution as interpreted in *Alleyne v. United States*, 570 U.S. ___, 133 S. Ct. 2151, 2155, 2160-63, 186 L. Ed. 2d 314 (2013), because it permits a judge to find by a preponderance of the evidence the existence of one or more aggravating factors necessary to impose an increased mandatory minimum sentence, rather than requiring a jury to find the existence of the aggravating factors beyond a reasonable doubt.

Appeal from Saline District Court; JEROME P. HELLMER, judge. Opinion filed December 4, 2015. Conviction affirmed, sentence vacated, and case remanded.

*Heather Cessna*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant, and *Davin Sprague*, appellant, was on a supplemental brief pro se.

*Ellen Hurst Mitchell*, county attorney, argued the cause, and *Derek Schmidt*, attorney general, and *Kris Ailslieger*, of Office of the Kansas Attorney General, were with her on the briefs for appellee.

The opinion of the court was delivered by

STEGALL, J.:  A jury found Davin Sprague (Sprague) guilty of premeditated first-degree murder for killing his wife, Kandi Sprague (Kandi). The district court sentenced Sprague to a hard 50 life sentence. Sprague raises numerous issues on direct appeal to this court, including four issues raised in a pro se supplemental brief. We affirm Sprague's conviction but vacate his sentence and remand for resentencing. In so doing, we hold as follows:  (1) Because there was only one killing here, this is not a multiple acts case requiring a unanimity instruction; (2) the district court properly denied Sprague's motion arguing ineffective assistance of counsel because Sprague failed to raise more than a conclusory claim; (3) during closing argument, the prosecutor erred when using the term "preposterous" and implying that two witnesses had "no motive," but the error was harmless; (4) Sprague was not convicted in violation of the corpus delicti rule because the State presented ample evidence that a homicide had occurred; (5) the district court did not err when it denied Sprague's motion for acquittal; (6) Sprague's argument on appeal concerning admission of gruesome images into evidence was not properly preserved for our review; (7) the district court did not err when it denied Sprague's motion to suppress the results of a search of Sprague's outbuilding because the search was within the scope of the authorizing search warrant; (8) Sprague was not denied a fair trial due to cumulative error; and lastly, (9) we have already declared the sentencing scheme under which Sprague was sentenced to a hard 50 term of imprisonment to be unconstitutional, and thus Sprague's sentence must be vacated and his case remanded to the district court for resentencing.

FACTUAL AND PROCEDURAL BACKGROUND

Davin Sprague and his wife Kandi were living with their three children in a country home in rural Saline County, Kansas. On July 23, 2010, Sprague became aware that Kandi was on the verge of leaving him and filing for divorce. Sprague's mother, Ann Fleming, came to the Sprague home early that afternoon to take her grandchildren for the

3

weekend. Later that day, Kandi and her mother, Anna Christmas, had an hour-long phone conversation about the failing marriage. Kandi told her mother that she was thinking of divorcing Sprague. Kandi further confided that she had met another man online. A few minutes after the call ended, Kandi texted her mother, saying she was going to file for divorce. Her mother responded by asking if Sprague knew. Kandi replied: "'I don't think so. Love you.'"

But Sprague was quickly becoming aware. That same day, Sprague had taken Kandi's cell phone and used it to contact the man—Steven Peacock—Kandi had met online. Peacock told Sprague that he had been led to believe by Kandi that she was divorced. Sprague told Peacock that she was in fact married, and in a subsequent phone call, Sprague and Peacock spent some time discussing the marital problems between Sprague and Kandi. Subsequently, that evening, Peacock and Kandi talked on the phone and communicated over the internet via a social game they played with another woman, Jennifer Helm. Kandi continued to communicate with Peacock and Helm through the online social game until she signed off at 11:32 that night. This was the last known communication from Kandi before she died.

The next morning, July 24th, Kandi was gone. Sprague immediately began to tell friends, family, and law enforcement that Kandi had left him for another man while he was asleep that night. On August 2, while executing a search warrant related to Kandi's disappearance, police discovered her body buried in a shallow grave in the floor of a Morton building located on Sprague's property. Following this discovery, Sprague gave a new, and very different, description of the events that occurred between 11:30 at night on July 23rd and the next morning. Sprague's statement was recorded and that recording was eventually played to the jury during trial. Sprague stated that around midnight or 1 a.m., Sprague was working in his Morton building when Kandi walked into the building. Sprague claimed Kandi then started to attack him, putting her hands around his neck to

4

choke him. Sprague claimed that he felt fearful and threatened because Kandi was larger and stronger than he was. In order to defend himself, Sprague alleged, he grabbed a large pipe and hit Kandi in the back of the head.

After this, Sprague continued, Kandi fell down and "a bunch of blood and shit started coming out of her mouth." During the interview, Sprague made a gurgling noise to illustrate the noise he claimed Kandi was making. Sprague told police he saw Kandi in pain and believed she would die before an ambulance could arrive. Sprague explained that in order to spare her that fate, he took a rope and strangled Kandi until the "pain was gone." Sprague then decided he had better conceal Kandi's body for the sake of his daughters. He told police he spent the next 8 hours digging up the hard-packed dirt floor of the Morton building and burying his wife's body.

Erik Mitchell, a forensic pathologist and the medical examiner who conducted the autopsy, also testified at trial. He told the jury that based upon the state of the recovered remains certain facts were lost, such as whether there were hemorrhages around the neck or in the brain. The autopsy did reveal that Kandi had two separate fractures to her skull in the back of her head. But Mitchell opined that Kandi did not die as a result of the head injury, because he did not find the kind of blood clotting in the brain that would lead to death. Mitchell said that brain swelling secondary to the primary blunt force brain trauma could also cause death but that death from brain swelling "takes time." He indicated that death from fractures like the ones in Kandi's skull would take "more than a day." Mitchell testified the typical symptoms associated with this type of fracture would be unconsciousness, localized bleeding, nosebleed, tearing of the scalp, and possibly bleeding from the mouth. While he could not be certain, Mitchell testified there was a "very good chance" Kandi's head injuries were survivable.

5

Finally, Mitchell opined that the blunt force necessary to inflict the head injury Kandi sustained could not be generated in the manner Sprague described—*i.e.*, reaching around to strike the rear while face-to-face with Kandi and engaged in a struggle. While the autopsy report listed Kandi's head injury as the official cause of death, Mitchell testified that a subsequent strangling would be a "supervening" cause. However, due to the state of decomposition, he was unable to diagnose asphyxiation or strangling as a cause of death.

Following the killing, in addition to hiding Kandi's body, Sprague attempted to bolster his story that she had left him for another man by using her cell phone to send text messages to Kandi's mother and brother indicating that she was alive and well and would talk to them soon.

After hearing all of the evidence, a jury convicted Sprague of premeditated first-degree murder. The district court, following a hearing on the State's motion, imposed a hard 50 sentence pursuant to K.S.A. 21-4635. Sprague now appeals his conviction and sentence. We exercise jurisdiction pursuant to K.S.A. 2014 Supp. 22-3601(b)(3) (direct appeal to Supreme Court when life sentence imposed).

ANALYSIS

1. *No unanimity instruction was required.*

Sprague argues the district court erred in failing to give a unanimity instruction after the State presented a case where multiple acts could have constituted first-degree murder. Sprague's claim is that he could have killed Kandi either by the blow to the head or the subsequent strangling. The State argues that anytime there is only one killing, no unanimity instruction is required. The district court did not give a unanimity instruction, and the parties did not request one.

We have recently stated the appellate framework and standard of review for a unanimity instruction analysis:

"'Unanimity instruction errors are reviewed under a three-part framework. First, the reviewing court determines whether a multiple acts case is presented. The threshold question is whether jurors heard evidence of multiple acts, each of which could have supported conviction on a charged crime. *State v. King*, 299 Kan. 372, Syl. ¶ 1, 323 P.3d 1277 (2014). This is a question of law subject to unlimited review. *State v. Santos-Vega*, 299 Kan. 11, 18, 321 P.3d 1 (2014) (citing [*State v.*] *Voyles*, 284 Kan. [239,] 244, 160 P.3d 794 [2007]). If the case is a multiple acts case, the next question is whether error was committed. To avoid error, the State must have informed the jury which act to rely upon or the district court must have instructed the jury to agree on the specific act for each charge. Failure to elect or instruct is error. Finally, the court determines whether the error was reversible or harmless. *Santos-Vega*, 299 Kan. at 18. When, as here, the defendant failed to request a unanimity instruction, the court applies the clearly erroneous standard provided in K.S.A. 2013 Supp. 22-3414(3). See *Voyles*, 284 Kan. at 252-53. Under this test, to find the error reversible:

"'"[a]n appellate court must be firmly convinced that under the facts the jury would have returned a different verdict if the unanimity instruction had been given. See *State v. King*, 297 Kan. 955, 979-80, 305 P.3d 641 (2013); see also *State v. Trujillo*, 296 Kan. 625, 631, 294 P.3d 281 (2013) (noting court's decision to omit the 'real possibility' language from *Voyles* test to avoid confusion with the constitutional harmless error test)." *Santos-Vega*, 299 Kan. at 18.' *State v. De La Torre*, 300 Kan. 591, 596, 331 P.3d 815 (2014)." *State v. Castleberry*, 301 Kan. 170, 185-86, 339 P.3d 795 (2014).

Sprague contends the State presented evidence of two acts that could have constituted first-degree murder: the hitting of Kandi on the head with the metal pipe or the strangling of her with a rope. "When a case involves multiple acts, the jury must be

unanimous in finding which specific act constitutes the crime." *State v. King*, 297 Kan. 955, 977, 305 P.3d 641 (2013). The threshold question, however, is "whether the defendant's actions could have given rise to multiple counts of the charged crime or whether the alleged conduct was unitary." *State v. Trujillo*, 296 Kan. 625, 629, 294 P.3d 281 (2013). In *State v. De La Torre*, 300 Kan. 591, 598, 331 P.3d 815, *cert. denied* 135 S. Ct. 728 (2014), we recently explained:

> "'Multiple acts' are legally and factually separate incidents that independently satisfy the elements of the charged offense. See *King*, 299 Kan. at 379; *State v. Soto*, 299 Kan. 102, 111, 322 P.3d 334 (2014). Incidents are factually separate when independent criminal acts have occurred at different times or different locations or when a criminal act is motivated by a fresh impulse. Factually separate and distinct incidents are not unitary conduct. *King*, 299 Kan. 372, Syl. ¶ 2."

Refining the point, in *State v. Soto*, 299 Kan. 102, 111, 322 P.3d 334 (2014), we held:

> "Regardless of whether the State proved Soto acted as a principal or an aider and abettor, this case cannot be a multiple acts case because there was only one killing. Stated another way, none of the 'acts' Soto relies upon to support his multiple acts argument are factually and legally sufficient to satisfy all of the elements of first-degree premeditated murder."

Likewise, while Sprague argues there were two possible ways he could have killed Kandi, there are not two possible incidents that could have been charged as premeditated first-degree murder because there was only one killing. Because the facts cannot, under any circumstances, give rise to "multiple counts of the charged crime," this is not a multiple acts case. *Trujillo*, 296 Kan. at 629; see *Soto*, 299 Kan. at 111. As such, it was not error to fail to give a unanimity instruction.

2. *The district court properly denied Sprague's motion for ineffective assistance of counsel.*

Sprague filed a pro se motion alleging ineffective assistance of trial counsel prior to sentencing. At the same time, he filed a pro se motion for a new trial. The district court allowed Sprague an opportunity to argue the motions pro se during a discussion of posttrial motions and immediately before sentencing. Sprague argued primarily by reading his motions. The district court then ruled that Sprague's claim for ineffective assistance of counsel was essentially a complaint concerning trial strategy. The district court found that it could not "find any merit in the allegations that you have raised for the position that [counsel] was ineffective in her assistance in the defense of your case." The district court then denied the motion.

Sprague now argues the district court should have granted an evidentiary hearing based upon Sprague's claim that his counsel failed to present Sprague's daughters' police interviews at trial. Sprague argues this indicated a failure to investigate, which, in turn, required an evidentiary hearing. The State first claims the motion was not timely and then argues that the claims Sprague raised in his motion were either conclusory or not supported by the record and the district court properly denied the motion.

The State argues the district court lacked jurisdiction to hear Sprague's motion for ineffective assistance of counsel. But posttrial claims for ineffective assistance of counsel are not jurisdictionally barred, though they may be procedurally barred. *State v. Reed*, 302 Kan. 227, 235-36, 352 P.3d 530 (2015). The State's briefing on this point is sparse, simply mentioning *Barker v. State*, 297 Kan. 486, 303 P.3d 675 (2013) (window for filing K.S.A. 60-1507 motion opens when sentencing is final). When a litigant fails to adequately brief an issue it is deemed abandoned. See *State v. Bowen*, 299 Kan. 339, 355, 323 P.3d 853 (2014). And because jurisdiction is not implicated, we will consider

Sprague's claim on appeal regarding his motion for ineffective assistance of counsel. See *State v. Richard*, 300 Kan. 715, 728, 333 P.3d 179 (2014).

The burden is on the movant to show a claim of ineffective assistance of counsel warrants an evidentiary hearing. "[T]he movant must make more than conclusory contentions and must state an evidentiary basis in support of the claims or an evidentiary basis must appear in the record." *Swenson v. State*, 284 Kan. 931, 938, 169 P.3d 298 (2007). In determining whether that burden has been met, a district court has three options:

> "First, the court may determine that the motion, files, and records of the case conclusively show that the movant is entitled to no relief and summarily deny the movant's motion. Second, the court may determine from the motion, files, and record that a substantial issue or issues are presented, requiring a full evidentiary hearing with the presence of the movant. Finally, the court may determine that a potentially substantial issue or issues of fact are raised in the motion, supported by the files and record, and hold a preliminary hearing after appointment of counsel to determine whether in fact the issues in the motion are substantial. In the event the court determines that the issue or issues are not substantial, the court may move to a final decision without the presence of the movant. If the issue or issues are substantial, involving events in which the movant participated, the court must proceed with a hearing in the presence of the movant." *Trotter v. State*, 288 Kan. 112, 132, 200 P.3d 1236 (2009).

Sprague and the State both argue this matter should be treated as a summary denial of the motion, and we agree. "The standard of review for the summary dismissal of K.S.A. 60-1507 motions is de novo, requiring an appellate court to determine whether the motion, files, and records of the case conclusively show that the movant is entitled to no relief." *Trotter*, 288 Kan. at 132.

Sprague presented five claims of ineffective assistance of counsel in his motion:

"1. Defense [counsel] refused to act on the defendant[']s request, to exhibit the supporting evidence and witnesses to the court and jury in support of the defense prior to resting the defense. In this acting on her own will, and not of the defendants, without the defendant[']s approval!

"2. Defense [counsel] refused repeatedly all the requests made by the defendant to voice necessary objections to the court on the defendant[']s behalf. Throughout the course of the trial.

"3. Defense [counsel] refused to use court admitted evidence which contradict[ed] the testimony of a key [S]tate[']s witness during the defense cross examining.

"4. Defense [counsel] made no attempts to have the defendant aided for the p[sych]ological breakdown the defendant has suffered under since the unplan[n]ed tragedy of July 23rd 2010.

"5. Defendant suspects the defense [counsel], purposefully and intentionally refused to defend the defendant and misused defendant[']s trust in [counsel] in asking defendant not to testify though defendant voiced he wanted to and was prepared to. The defense [counsel] clearly acted on behalf of the county attorney[']s benefit for unknown personal reason."

On appeal, Sprague also highlights his oral argument to the district court that his counsel failed to introduce the police interview with his daughters.

To show deficient performance of counsel, a criminal defendant must establish

"""(1) counsel's performance was deficient, which means counsel made errors so serious that counsel's performance was less than that guaranteed by the Sixth Amendment, and (2) the deficient performance prejudiced the defense, which requires showing counsel's

11

errors were so serious they deprived defendant of a fair trial. Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel must be highly deferential. To show prejudice, the defendant must show a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." [Citations omitted.]'" *Robertson v. State*, 288 Kan. 217, 225, 201 P.3d 691 (2009) (quoting *Haddock v. State*, 282 Kan. 475, 512-13, 146 P.3d 187 [2006]).

As stated earlier, the burden is on Sprague to establish counsel was ineffective. In order to meet this burden, he must do more than make conclusory remarks with no evidentiary support. See *Trotter*, 288 Kan. at 131-32. On appeal, Sprague attempts to reframe his claim as one that counsel was ineffective for failing to investigate whether the evidence relating to Sprague's daughters was admissible. Sprague relies on cases in which counsel failed to investigate the possibility of interviewing child victims. See *Mullins v. State*, 30 Kan. App. 2d 711, 46 P.3d 1222, *rev. denied* 274 Kan. 1113 (2002). Sprague's claims before the district court, however, were not as he now characterizes them. Moreover, Sprague failed to proffer any evidentiary basis that his counsel's performance was constitutionally deficient. Sprague's motion was insufficient to require an evidentiary hearing, and the district court did not err by denying it summarily.

3. *The prosecutor erred during closing arguments, but the error was harmless.*

Sprague next argues the prosecutor committed two instances of misconduct during closing argument by using the word "preposterous" and by implying two witnesses had "no motive" when testifying. The State concedes the use of "preposterous" went outside the wide latitude allowed to prosecutors but contends the statement referring to "no motive" was allowable rebuttal. The State goes on to argue that even if the statements were improper, they did not prejudice Sprague and did not constitute reversible error.

12

Our review of prosecutorial misconduct claims entails a two-step process:

"We first decide whether the comments were outside the wide latitude a prosecutor is allowed, *e.g.*, in discussing the evidence. If so, there was misconduct. Second, if misconduct is found, we have said the court 'must determine whether the improper comments prejudiced the jury and denied the defendant a fair trial.' *State v. Bridges*, 297 Kan. 989, 1012, 306 P.3d 244 (2013) (citing *State v. Marshall*, 294 Kan. 850, 856, 281 P.3d 1112 [2012]).

"For years we have considered several factors in analyzing this second step: (1) whether the misconduct was gross and flagrant; (2) whether it was motivated by prosecutorial ill will; and (3) whether the evidence was of such a direct and overwhelming nature that the misconduct would likely have had little weight in the minds of jurors. No single factor controls the outcome of this inquiry. *Bridges*, 297 Kan. at 1012 (citing *Marshall*, 294 Kan. at 857)." *State v. Akins*, 298 Kan. 592, 599, 315 P.3d 868 (2014).

Should we find error, we must determine whether the misconduct meets the dual standard of constitutional and statutory harmless error. *Akins*, 298 Kan. at 599.

Sprague claims two instances of misconduct occurred during closing arguments. First, when discussing Sprague's version of events, the prosecutor stated:

"Does it make sense to you, ladies and gentlemen, that if you accept the Defendant's statements to officers he is struggling with this lady that he wants to point out to the officers is much larger and stronger than him, she has her hands around his neck and he's just able to reach down, grab this pipe and hit her in the head with it. Does that make sense? Does the Defendant's story make sense in that regard that he had to defend himself in that fashion? *Preposterous*, ladies and gentlemen." (Emphasis added.)

13

The State concedes this statement was improper because a "prosecutor may not state his or her personal belief as to the reliability or credibility of testimony given at a criminal trial." *State v. Brinklow*, 288 Kan. 39, Syl. ¶ 6, 200 P.3d 1225 (2009).

The second statement occurred during the State's rebuttal portion of closing argument:

> "Because Kandi Sprague may have spent more time on the internet, and many people do, doesn't justify her death, that she may not have been the parent that some people may have wanted her to be in that timeframe, doesn't justify her death. Steven Peacock and Jennifer Helm, you are not asked to judge whether they are good people or bad people, whether you like them or don't like them. *But I submit they don't have any motive in coming in here and testifying*." (Emphasis added.)

We have consistently held that it is "improper for a prosecutor to attempt to bolster the credibility of the State's witnesses." *State v. Donaldson*, 279 Kan. 694, 708, 112 P.3d 99 (2005). In *Donaldson*, the State improperly bolstered the testimony of a detective by stating he received no additional pay for testifying as he did and if he was making testimony up he could ruin his career and two other trials. In contrast, we have also stated it was not misconduct for the prosecution to say:

> "'No police officer benefits from this investigation, no police officers benefit from concocting stories and making Mr. McReynolds agree to those stories. There's only one person in the courtroom right now who benefits from coming into this room, concocting a story and testifying under oath about that and you know who that person is.'" *State v. McReynolds*, 288 Kan. 318, 325, 202 P.3d 658 (2009).

The latitude given to the State includes "explaining to juries what they should look for in assessing witness credibility, especially when the defense has attacked the credibility of the State's witnesses." *McReynolds*, 288 Kan. at 325. Since *McReynolds*,

14

however, we have clarified that "a prosecutor commits misconduct by making an improper argument, even if the improper argument is made in response to arguments or statements by defense counsel. The open-the-door rule does not insulate a prosecutor from a finding of misconduct." *State v. Marshall*, 294 Kan. 850, 860, 281 P.3d 1112 (2012); see also *State v. Stimec*, 297 Kan. 126, 130, 298 P.3d 354 (2013) ("In short, defendants do not open the door to prosecutorial misconduct.").

Here, whether or not the State was improperly bolstering the credibility of its witnesses, the prosecutor was commenting on facts outside of the evidence and was injecting her personal opinion regarding witnesses' motives. This was improper. See *State v. Hall,* 292 Kan. 841, 848, 257 P.3d 272 (2011) (a prosecutor cannot comment on facts outside the evidence); *Brinklow*, 288 Kan. 39, Syl. ¶ 6.

Having found two instances of prosecutorial error during closing arguments, we must next look to the factors indicating prejudice: "(1) whether the misconduct was gross and flagrant; (2) whether it was motivated by prosecutorial ill will; and (3) whether the evidence was of such a direct and overwhelming nature that the misconduct would likely have had little weight in the minds of jurors." *Akins*, 298 Kan. at 599. In applying this analysis, no single factor controls the outcome of the inquiry. 298 Kan. at 599.

"In determining whether prosecutorial misconduct was gross and flagrant, among the things an appellate court considers are whether the comments were repeated, emphasized improper points, were planned or calculated, or violated well-established or unequivocal rules." *Bridges*, 297 Kan. 989, Syl. ¶ 18. The record does not indicate the statements of the prosecution were repeated, planned, or emphasized. To the contrary, they are isolated and short. There is nothing to indicate a deliberate attempt to emphasize anything improper. We hold the comments do not qualify as gross and flagrant.

15

"In determining whether prosecutorial misconduct was motivated by ill will, among the things an appellate court considers are whether the conduct was deliberate, repeated, or in apparent indifference to a court's ruling." *Bridges*, 297 Kan. 989, Syl. ¶ 19. Here, the prosecutor's errors do not appear deliberate, repeated, or in disregard of a court ruling. We hold the comments were not the product of ill will.

Finally we look to "whether the evidence was of such a direct and overwhelming nature that the misconduct would likely have had little weight in the minds of jurors."*Akins*, 298 Kan. at 599. "Before the third factor can ever override the first two factors, an appellate court must be able to say that the harmlessness tests of both K.S.A. 60-261 and *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967), have been met." *Akins*, 298 Kan. 592, Syl. ¶ 2. In analyzing both constitutional and nonconstitutional error, an appellate court need only address the higher standard of constitutional error. 298 Kan. 592, Syl. ¶ 3. The constitutional standard for harmless error provides:

> "[T]he error may be declared harmless where the party benefitting from the error proves beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict." *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).

Here, the evidence was overwhelming. Sprague confessed to police that after hitting Kandi in the head he strangled her with a piece of rope while she was still alive. The State's medical expert testified that given the nature of the fracture's in Kandi's skull, she was likely still alive—and could have survived for more than a day if not fully recovered—after she was hit on the head. Of the prosecutor's two improper statements, the second went solely to the statements of witnesses that had nothing to do with the actual evidence of the killing. The State's single utterance of "preposterous," while

improper, was in the middle of argument tied to facts relating to whether Sprague could have reached around Kandi's body and struck her with sufficient blunt force to cause the injuries she sustained. The State's argument—though perhaps not its characterization—was supported by testimony from the State's medical expert. As such, we have no difficulty concluding that there is no reasonable possibility that the improper statements affected the outcome of the trial.

4. *Sprague was not convicted in violation of the corpus delicti rule*.

Sprague argues in his pro se appellate brief that his statements to the police that he strangled his wife were uncorroborated extrajudicial statements and that their admission into evidence violated the corpus delicti rule. We have recently given the Kansas corpus delicti rule extensive treatment and clarified its application. See *State v. Dern*, 302 Kan. ___, ___ P.3d ___ (No. 106,406, filed November 25, 2015). In Sprague's case, we need not look beyond what we described in *Dern* as the "'formal'" application of the rule. 302 Kan. at ___, slip op. at 23. "In a homicide case, the corpus delicti is the body or substance of the crime which consists of the killing of the decedent by some criminal agency, and is established by proof of the two facts, that one person was killed, and that another person killed him [or her]." *State v. Doyle*, 201 Kan. 469, Syl. ¶ 1, 441 P.2d 846 (1968). The formal corpus delicti rule requires the State to make a prima facie showing of the corpus delicti independent of any extrajudicial admissions or confessions of a defendant. *Dern*, 302 Kan. at ___, slip op. at 23-24. The evidentiary threshold for making the required prima facie showing is slight and may consist entirely of circumstantial evidence. See 302 Kan. at ___, slip op. at 24, 35.

Here, the State far exceeded the evidentiary threshold necessary to establish the corpus delicti of the charged crime—the murder of Kandi Sprague. Law enforcement found her body in a shallow grave in the floor of a Morton building, and the subsequent

17

medical examination indicated that she had suffered significant head injuries caused by blunt force trauma to the back of her skull. Sprague was not convicted in violation of the corpus delicti rule.

5. *The district court did not err when it denied Sprague's motion for acquittal*.

Sprague next argues in his pro se appellate brief that the district court erred when it denied Sprague's motion for acquittal because the State failed to present sufficient evidence to convict him of first-degree premeditated murder. K.S.A. 22-3419 permits a district court to enter a judgment of acquittal if, at the close of evidence, there is insufficient evidence to support a charged crime. In reviewing any ruling on such a motion, we examine whether sufficient evidence supports the conviction. *State v. Ta*, 296 Kan. 230, 236, 290 P.3d 652 (2012). "When the sufficiency of the evidence is challenged in a criminal case, this court reviews the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Brooks*, 298 Kan. 672, 688, 317 P.3d 54 (2014).

Murder in the first degree requires the killing of a human being committed "[i]ntentionally and with premeditation." K.S.A. 21-3401. The State presented ample evidence to support such a conviction. Investigators found Kandi's body buried in the floor of Sprague's Morton building. Medical testimony indicated she had two fractures on her skull consistent with being struck. Sprague confessed he struck Kandi when she attacked him and he then choked her to death. Such evidence, taken in a light most favorable to the State, is sufficient for a rational factfinder to find Sprague guilty of premeditated first-degree murder beyond a reasonable doubt.

18

6. *Sprague's argument on appeal concerning admission of gruesome images into evidence was not properly preserved for our review.*

Sprague's pro se appellate brief goes on to argue that the district court erred in refusing to suppress gruesome images. Sprague asserts a motion to suppress these photos was filed. Sprague, however, provides no citation to the record to show that a motion to suppress was actually filed or any citation to a timely objection to the admission of such evidence. The State contends that no motion to suppress was filed and no objection was made to the images. The State's position is consistent with our review of the record. Prior to trial, Sprague filed a motion in limine, requesting the suppression of gruesome images. In the hearing on that motion, however, it was indicated the ruling would be delayed so defense counsel could come to an agreement with the State over the images. The district court then took the issue under advisement. There was no contemporaneous objection at trial to the admission of any images. K.S.A. 60-404 requires a timely and specific objection to the admission of evidence at a trial in order to preserve issues arising from that admission for appeal. This claim on appeal was not preserved for our review and is therefore dismissed.

7. *The district court did not err when it denied Sprague's motion to suppress the results of a search of Sprague's outbuilding.*

Sprague's final pro se appellate argument is that the district court erred in denying his motion to suppress the results of law enforcement's search of his Morton building. Sprague's basic claim is that the search was warrantless because the Morton building was outside the scope of the search warrant. The State contends this claim was not preserved by a contemporaneous objection. Contrary to the State's assertion, however, Sprague did request and was granted a continuing objection regarding his motion to suppress prior to the admission of evidence regarding the discovery of Kandi's body.

On August 1, 2010, the district court issued a search warrant for items related to Kandi's disappearance, including a human body. The warrant stated, after a list of those items:

"Which items are contraband, or are fruits, instrumentalities, or evidence of such offense and are located in or upon the following described persons, places, thing or means of conveyance, to wit:

"The home located at 2660 East Shipton Road, located in Saline County, Kansas. The home is a gray in color with brick one story ranch style home with a walk out basement in the back yard. It has white trim with a two car open drive way that leads to the walk out basement. The numbers of 2660 are painted on a gray in color mail box at the entrance to the driveway of E. Shipton Road."

Upon the second day of searching the premises at that address, investigator Michael Rogers discovered Kandi's body buried in the dirt floor of a Morton building on the lot. Sprague filed a motion to suppress the evidence of the discovery of Kandi's body, arguing that the search warrant did not support the search of the Morton building as the warrant specified the "home" at the location. The district court held an evidentiary hearing on the matter.

At that hearing, Rogers described the property as a plot of approximately 2 acres with one fence stretching north and south along the east property line and another stretching east and west along the south property line. Rogers described the Morton building itself as approximately 40 feet wide by 50 feet long. Rogers estimated the distance between the Morton building and the house was "[t]hirty, thirty-five yards, something like that, maybe more." The buildings were not separated from one another by a fence.

20

At the end of the hearing, the district court denied the motion to suppress. The district court ruled that "home" as used in the warrant referred to "the large sense of the curtilage of the home." The district court noted that with a rural or suburban home such as this "the home is the homestead, not simply the building used as a residence, but the entire home and all of the things associated with that residence in this setting." As such, the district court ruled that the premises were adequately described in the warrant by the street number and location and the Morton building was included.

> "When reviewing a motion to suppress evidence, an appellate court determines whether the factual underpinnings of the district judge's decision are supported by substantial competent evidence. The ultimate legal conclusion to be drawn from those facts raises a question of law requiring application of a de novo standard. An appellate court does not weigh evidence to find facts." *State v. Ransom*, 289 Kan. 373, Syl. ¶ 1, 212 P.3d 203 (2009).

Sprague asserts the investigating officers did not have a search warrant for the Morton building, which he refers to as his auto repair business. The actual question is whether the search warrant's location description was adequate in scope to include the Morton building. We hold that it was.

The Fourth Amendment to the United States Constitution requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

> "The scope of Section 15 of the Kansas Constitution Bill of Rights is identical to that of the Fourth Amendment to the United States Constitution. . . .
>
> > "To satisfy the specificity requirement of the constitutions the search warrant must describe the premises to be searched with sufficient particularity to permit the

> executing officer to locate the same from the face of the warrant. [Citations omitted.]"
>
> *State v. LeFort*, 248 Kan. 332, 334-35, 806 P.2d 986 (1991).

See also *Steele v. United States*, 267 U.S. 498, 503, 45 S. Ct. 414, 69 L. Ed. 757 (1925) ("It is enough if the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended."). "[W]arrants and their supporting affidavits are interpreted in a common sense, rather than a hypertechnical, fashion. To do otherwise would tend to discourage police officers from submitting their evidence to a judicial officer before acting." *LeFort*, 248 Kan. at 335-36.

This court has historically held that "the term 'premises' as used in the warrant included all property necessarily a part of and appearing so inseparable as to be considered a portion thereof." *State v. McClelland*, 215 Kan. 81, 84, 523 P.2d 357 (1974). While the warrant here uses the term "home" rather than premises, the warrant's inclusion of the address of the premises and description of areas outside the home such as the driveway and the mailbox are sufficient to authorize a search of the premises. The district court's ruling that Sprague's Morton building was sufficiently "associated with [Sprague's home] in this setting" to permit the search was both supported by substantial competent evidence and legally correct. Sprague's argument to the contrary would require that we read the warrant in a hypertechical fashion rather than with an eye towards a common sense and ordinary interpretation. The district court did not err in denying Sprague's motion to suppress.

8. *Sprague was not denied a fair trial due to cumulative error*.

Sprague contends cumulative error denied him a fair trial. The test for cumulative error is "'whether the totality of circumstances substantially prejudiced the defendant and denied the defendant a fair trial. No prejudicial error may be found upon this cumulative effect rule, however, if the evidence is overwhelming against the defendant.'" *State v.*

22

*Edwards*, 291 Kan. 532, 553, 243 P.3d 683 (2010) (quoting *State v. Ellmaker*, 289 Kan. 1132, Syl. ¶ 12, 221 P.3d 1105 [2009]). "The presence of one error is obviously insufficient to accumulate." *State v. Houston*, 289 Kan. 252, 277, 213 P.3d 728 (2009). Here we have found only two instances of prosecutorial error which occurred during closing arguments, both of which we have deemed harmless. Considered together, these errors are likewise harmless. We find no cumulative error.

9. *The sentencing scheme under which Sprague was sentenced to a hard 50 term of imprisonment is unconstitutional.*

Finally, Sprague appeals the imposition of a hard 50 term of imprisonment. Following Sprague's sentencing, we have determined that the statutory scheme under which Sprague was sentenced is unconstitutional. In *State v. Soto*, 299 Kan. 102, Syl. ¶ 9, 322 P.3d 334 (2014), we held:

> "Kansas' statutory procedure for imposing a hard 50 sentence as provided in K.S.A. 21-4635 violates the Sixth Amendment to the United States Constitution as interpreted in *Alleyne v. United States*, 570 U.S. ___, 133 S. Ct. 2151, 2155, 2160-63, 186 L. Ed. 2d 314 (2013), because it permits a judge to find by a preponderance of the evidence the existence of one or more aggravating factors necessary to impose an increased mandatory minimum sentence, rather than requiring a jury to find the existence of the aggravating factors beyond a reasonable doubt."

As such, Sprague's hard 50 sentence was unconstitutionally imposed and must be vacated, and the case is remanded to the district court for resentencing. Accordingly, the question of whether the State presented sufficient evidence for the district court to determine sufficient aggravating factors existed is now moot. See *State v. Roeder*, 300 Kan. 901, 942, 336 P.3d 831 (2014). In *Roeder*, we concluded:

23

"Moreover, the retroactive provision speaks to applying the new statute where a sentence under the old statute has been 'vacated for *any* reason *other than* sufficiency of the evidence as to all aggravating circumstances.' (Emphasis added.) K.S.A. 2013 Supp. 21-6620(e). The Sixth Amendment violation that requires us to vacate Roeder's hard 50 sentence would fit within the category of 'any reason other than sufficiency of the evidence.' In other words, the plain language of the provision purports to apply the new sentencing scheme to this case because the old sentence is being vacated for a reason other than the insufficiency of the aggravating circumstances evidence. Whether the sentence might also have been subject to being vacated based upon an insufficiency of the evidence if the sentencing scheme had not been found unconstitutional is an academic question we need not answer." 300 Kan. at 942-43.

The State encourages this court to address whether the new hard 50 statute, K.S.A. 2013 Supp. 21-6620, violates the Ex Post Facto Clause when retroactively applied under subsection (f). The State, however, acknowledges the issue is "arguably" not ripe for review. We have previously found the issue unripe and refrained from issuing an advisory opinion regarding the point, and we do so again today. See *Soto*, 299 Kan. at 129.

Sprague's conviction is affirmed. His sentence is vacated, and this matter is remanded to the district court for resentencing.