NOT DESIGNATED FOR PUBLICATION

No. 122,104

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DYLAN R. CORYELL,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Decatur District Court; PRESTON PRATT, judge. Opinion filed May 21, 2021. Affirmed in part, reversed in part, and remanded with directions.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Kristafer R. Ailslieger*, deputy solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., POWELL and CLINE, JJ.

PER CURIAM:  Dylan R. Coryell appeals the summary denial of his K.S.A. 60-1507 motion, raising claims of ineffective assistance of appellate counsel as well as a claim of newly discovered evidence. Coryell attached a letter to his motion alleging that another person confessed to firing the weapon that killed the victim of Coryell's crime. Upon review of the issues presented, we affirm the district court's summary denial of Coryell's K.S.A. 60-1507 motion as it relates to ineffectiveness of appellate counsel, but we find that Coryell was entitled to an evidentiary hearing on his newly discovered evidence claim.

1

A jury convicted Coryell of second-degree intentional murder and aggravated battery in March 2013. A detailed recitation of the facts of the case can be found in this court's decision on direct appeal.

Briefly, in October 2011, Coryell was in a relationship with Sarah Campbell, who was also dating Corey Cook. One evening, Coryell and some friends were partying and drinking together while Campbell and Cook were also gathered with friends to drink and shoot firearms. Over the course of the evening, the two groups sent hostile text-messages to each other, escalating to the point that certain individuals—including Coryell, his friend Everett Urban, and Cook—arranged to fight. Around 1:30 a.m., Coryell and Urban went to the house where Cook and Campbell were residing and found Campbell and Cook sleeping in bed. Upon finding them together, multiple trial witnesses testified that Coryell fired a shotgun into the bedroom, killing Cook and injuring Campbell. See *State v. Coryell*, No. 110,542, 2016 WL 757568 (Kan. App. 2016) (unpublished opinion).

While his direct appeal was pending, this court granted Coryell's motion to remand the case for a *Van Cleave* hearing regarding ineffective assistance of his trial counsel, Justin A. Barrett. On remand, the same district court judge who had made the pretrial rulings and conducted the jury trial heard 2 1/2 days of testimony from 19 witnesses. The court denied the motion in a detailed 40-page memorandum decision. Coryell appealed that ruling, and the panel issued a decision affirming his convictions and sentence, as well as affirming the district court's rejection of his ineffective assistance claims. *Coryell*, 2016 WL 757568, at *6-33.

In December 2018, Coryell filed a pro se K.S.A. 60-1507 motion, arguing that he received ineffective assistance from his appellate counsel, Richard Ney, at the *Van Cleave* hearing and on direct appeal, and that newly discovered evidence showed Urban

2

confessed to firing the weapon that killed Cory. He attached a handwritten letter from Gatlin R. Beachel, who allegedly overheard Urban "bragging" to another inmate that he had pulled the trigger and shot Cook, and that Urban "got away with it because he was related to the sheriff and that the people . . . on [Coryell]'s side got [threatened] that if they said anything that they would go to jail."

The district court held a nonevidentiary preliminary hearing in July 2019, which Coryell did not attend but at which he was represented by appointed counsel. After hearing arguments from the parties about whether there should be an evidentiary hearing held on any of the claims, the court took the matter under advisement.

The district court summarily denied Coryell's motion in a lengthy written ruling, addressing each ineffective assistance claim and finding that the newly discovered evidence was not credible "in light of all the evidence introduced at the original trial to reasonably produce a different outcome."

Coryell timely appealed.

ANALYSIS

*The district court did not err in summarily denying Coryell's ineffective assistance of counsel claims.*

Coryell first argues the district court erred in summarily denying his ineffective assistance of counsel claims in his K.S.A. 60-1507 motion. Although he made 10 total claims of ineffective assistance directed at Ney's representation on direct appeal, Coryell only reasserts 2 of them here: (1) whether Ney was ineffective for failing to include trial exhibits in the appellate record; and (2) whether Ney was ineffective for failing to

adequately brief Coryell's ineffective assistance of trial counsel claim based on a suppression issue.

Thus, since Coryell concedes that the remaining ineffective assistance claims were properly denied, we consider them abandoned. See *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018) (issues not briefed are considered waived or abandoned); see also *State v. Lowery*, 308 Kan. 1183, 1231, 427 P.3d 865 (2018) (a point raised incidentally in a brief and not argued therein is also deemed abandoned).

*The standard of review is de novo.*

When the district court summarily denies a K.S.A. 60-1507 motion after holding a preliminary hearing, as it did here, an appellate court is in just as good a position as the district court to consider the merits. *Grossman v. State*, 300 Kan. 1058, 1061, 337 P.3d 687 (2014). As a result, this court conducts a de novo review to determine whether the motion, files, and records of the case conclusively establish that the movant is not entitled to relief. *Beauclair v. State*, 308 Kan. 284, 293, 419 P.3d 1180 (2018).

To avoid the summary denial of a motion brought under K.S.A. 60-1507, a movant bears the burden of establishing entitlement to an evidentiary hearing. To meet this burden, a movant's contentions must be more than conclusory, and either the movant must set forth an evidentiary basis to support those contentions or the basis must be evident from the record. If the movant makes such a showing, the court must hold a hearing unless the motion is a "'second'" or "'successive'" motion seeking similar relief. *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014) (quoting *Holmes v. State*, 292 Kan. 271, 274, 252 P.3d 573 [2011]).

To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish (1) that the performance of defense counsel was deficient under the totality

4

of the circumstances, and (2) that the deficient performance prejudiced the defendant. *Sola-Morales*, 300 Kan. at 882 (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 [1984]). "To show prejudice, the defendant must show a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Sprague*, 303 Kan. 418, 426, 362 P.3d 828 (2015).

Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury. 303 Kan. at 426. In considering deficiency, "there is a strong presumption counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014). To establish prejudice, the defendant must show a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different, with a reasonable probability meaning a probability sufficient to undermine confidence in the outcome. *Sprague*, 303 Kan. at 426.

With that foundation in mind, we turn to Coryell's two claims of ineffective assistance of appellate counsel.

*Failure to include trial exhibits in record on appeal*

Coryell claims his appellate counsel was ineffective for not including trial exhibits necessary for proper consideration of his claim that Barrett provided ineffective assistance by failing to call expert witnesses about his intoxication. We pause to note that there was no dispute that Coryell's blood-alcohol content was .18 about 5 hours after the shooting. *Coryell*, 2016 WL 757568, at *3.

This court's decision in Coryell's direct appeal referred multiple times to the omission of trial exhibits, including those related to Barrett's failure to call expert witnesses on intoxication at trial. See *Coryell*, 2016 WL 757568, at *8-9. After concluding that Barrett made a strategic decision not to call expert witnesses and that doing so did not prejudice Coryell—based on a lengthy discussion of the testimony elicited at the *Van Cleave* hearing—the panel explained:

"Our conclusion is *buttressed* by [Coryell]'s omission of the trial exhibits from the record on appeal. For example, the State's evidence of [Coryell]'s functioning while intoxicated included [his] 911 calls, which are omitted from the record. We cannot conduct a full evaluation of [Barrett]'s decisions without considering the State's evidence which confronted him when planning [Coryell]'s defense.

"The lack of an adequate record also hampers our prejudice analysis more generally. For example, the jury had to evaluate [Coryell]'s account of the shooting which he related during the police interview. [Coryell]'s assertion that he caught the shotgun with the barrel pointed into the bedroom was the only defense explanation of why the weapon fired in [Cook]'s direction. We are unable to fully consider the jury's verdict without the diagram and photographs of [the] residence, which could either support or call into question the likelihood of [Coryell]'s account. We will continue to discuss prejudice in the following issues, but we believe [Coryell] has failed to designate a record affirmatively showing prejudice to his criminal defense. See *State v. Bridges*, 297 Kan. 989, 1001, 306 P.3d 244 (2013)." (Emphasis added.) 2016 WL 757568, at *9.

Although the panel referred to some specific exhibits when discussing the claim—like Coryell's 911 calls and the diagram and photographs of the residence—the panel's larger concern appeared to be that Ney included *no* trial exhibits.

The district court denied this claim because both it and the panel concluded that Barrett's decision not to call expert witnesses on intoxication was a strategic choice made after thorough investigation. See *Coryell*, 2016 WL 757568, at *8-9. As a result, the court

6

presumed "that appellate counsel's failure to include trial exhibits on appeal was within the wide range of reasonable professional assistance because those exhibits bolster the trial court's factual findings."

Coryell now challenges this finding, contending that the district court cited no authority to support its presumption and that the court needed to hold an evidentiary hearing to consider Ney's testimony on why he omitted the trial exhibits on appeal. He also asserts that the court's decision was not supported by substantial and competent evidence. Simply put, his arguments are not persuasive.

First, Coryell fails to meet his burden to overcome the presumption that Ney's performance was objectively reasonable. He asserts that his counsel's failure to include trial exhibits in the appellate record fell below the objective standard of reasonableness. As support, he relies only on *State v. Sisson*, 302 Kan. 123, 128, 351 P.3d 1235 (2015), and references the longstanding rule that an appellant has a duty to designate a record that affirmatively shows any claims of error. But he cites no authority to show that violating this rule constitutes deficient performance. *State v. Salary*, 309 Kan. 479, 481, 437 P.3d 953 (2019) (failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is the same as failing to brief the issue).

Moreover, by Coryell's own admission, the missing exhibits "did not provide any additional insight into the issues presented on appeal." By making this admission, Coryell asserts that the panel's decision in his direct appeal was somehow hindered by the lack of trial exhibits because the court could not fully evaluate Barrett's performance. But a review of the decision shows the panel concluded Coryell had failed to prove Barrett provided deficient performance, even despite the lack of trial exhibits. *Coryell*, 2016 WL 757568, at *8-9. The panel also made clear that it made its decision regarding counsel's trial strategy independent of the failure to include exhibits. The failure to include exhibits

7

simply "buttressed" its conclusion. 2016 WL 757568, at *9. To buttress means to "support or reinforce." Webster's New World College Dictionary 204 (5th ed. 2014).

Second, Coryell likewise fails to show that he was prejudiced by Ney's alleged deficient performance. Even if this court assumes that failing to include the trial exhibits fell below the objective standard of reasonableness, Coryell still needs to show a reasonable probability that the outcome of his appeal would have been different. *Sprague*, 303 Kan. at 426. In his direct appeal, the panel concluded that lack of expert testimony about Coryell's intoxication did not prejudice him because the jury could discern his intoxication based on the available testimony and the "jurors' lay understanding of the effects of intoxication." 2016 WL 757568, at *9. So in other words, he needs to show that the panel would have reached a different conclusion, particularly that the jury needed to hear from experts to understand the extent of his intoxication.

Coryell contends that the panel had no chance to compare the trial exhibits with the expert testimony elicited at the *Van Cleave* hearing that his blood-alcohol level would have been much higher at the time of the shooting. But by Coryell's own admission, the specific exhibits—i.e., the photographs and diagram of the house, and his 911 call— neither cast doubt upon nor firmly supported his version of the events that night. Despite the omission of the trial exhibits, the panel concluded that expert witness testimony would have been cumulative, "given the significant amount of lay testimony and evidence showing [Coryell]'s intoxication and its effects." 2016 WL 757568, at *9.

Ultimately, the jury had a chance to view all the exhibits and could infer that Coryell's blood-alcohol level was higher at the time of the shooting than during the interview. And just as the panel determined on direct appeal, the inclusion of expert testimony on his precise intoxication level at the time of the shooting would not raise a sufficient probability of undermining confidence in the jury's verdict. Even with the

benefit of the omitted trial exhibits, Coryell cannot show prejudice, and thus his claim of ineffective assistance fails.

*Failure to adequately brief ineffective assistance of trial counsel claim*

In a somewhat related claim, Coryell claims Ney was ineffective for failing to brief the merits of an ineffective assistance of trial counsel claim, this time based on Barrett's failure to present expert testimony on intoxication at his suppression hearing. In particular, Coryell points to Ney's failure to brief the merits of the suppression issue, thereby abandoning a key element of his ineffective assistance of trial counsel claim. In short, the suppression motion asserted that the combined effects of Coryell's "intoxication, adrenalin, and other stress hormones" prevented him from freely and voluntarily waiving his *Miranda* rights.

The record reveals some support for Coryell's claim. In the appellate brief from his direct appeal, after summarizing the testimony from the *Van Cleave* hearing, Ney only made a legal argument that the district court applied the wrong prejudice standard. In particular, the brief argued,

> "The district court applied the wrong prejudice standard in evaluating this issue. The district court hinged its decision on the fact that it would not have granted the motion to suppress even if it heard the expert evidence on Defendant's intoxication. The correct standard, however, is that a defendant must show that the suppression claim is meritorious, and that 'that there is a reasonable probability that *the verdict would have been different absent the excludable evidence*.' [Citation omitted.]" Brief of Appellant, 2014 WL 7641214, at *22.

The panel determined that Coryell had not shown "a likelihood of prevailing on the motion" because the district court had concluded the suppression motion was not meritorious even with the added expert testimony. *Coryell*, 2016 WL 757568, at *11

9

(citing *Styers v. Schriro*, 547 F.3d 1026, 1030 n.5 [9th Cir. 2008]). The panel declined to consider the merits of the suppression ruling since Coryell's brief failed to argue the suppression issue on appeal. 2016 WL 757568, at \*11.

To prevail on his claim, Coryell needs to establish that the district court would have granted the suppression motion given the expert testimony to show he was prejudiced by Ney's failure to brief that issue on direct appeal.

As support, Coryell relies on *State v. Johnson*, 286 Kan. 824, 190 P.3d 207 (2008). In *Johnson*, the Kansas Supreme Court held that the State bears the burden of proving the voluntariness of a statement by the preponderance of the evidence. 286 Kan. at 836. When considering the voluntariness of a statement, courts look to the following list of nonexclusive factors:

> "'(1) the accused's mental condition; (2) the manner and duration of the interrogation; (3) the ability of the accused to communicate on request with the outside world; (4) the accused's age, intellect, and background; (5) the fairness of the officers in conducting the interrogation; and (6) the accused's fluency with the English language.'" 286 Kan. at 836.

But as the State correctly points out, Coryell ignores a critical part of the analysis of the suppression issue. When reviewing a district court's decision on a suppression ruling, appellate courts generally apply a bifurcated standard. One component requires the reviewing court to determine whether the district court's factual findings are supported by substantial competent evidence *without reweighing the evidence, assessing witness credibility, or resolving conflicting evidence*. See *State v. Martinez*, 296 Kan. 482, 485, 293 P.3d 718 (2013). Simply put, Coryell's argument must fail on this point because he invites this court to do something it cannot do.

10

After the *Van Cleave* hearing, the district court made detailed findings of fact on the suppression issue. In particular, the court noted repeatedly that it got the chance to review the audio and video recordings of Coryell's KBI interview and ultimately found that expert witness testimony on intoxication would not have changed the court's ruling on the suppression motion "for the reasons stated in the order denying the motion to suppress."

Notably, Coryell's appellate briefing makes no attempt to challenge the district court's factual findings from that original order of denial. See *Salary*, 309 Kan. at 481 (issues not adequately briefed are considered waived or abandoned). Instead, he simply summarizes the expert testimony and makes a conclusory assertion that "[b]ased on this evidence, the appellate court would have found that the *Miranda* waiver was involuntary and that the statement should have been suppressed." But as the court's original order of denial shows, the court repeatedly observed Coryell's responses during the interview were "appropriate and coherent," and that he was "conscious and capable of understanding what he said and did" despite his blood-alcohol level at the time. Then, after the *Van Cleave* hearing, the court considered the expert testimony and still concluded these observations would still outweigh the added expert testimony about Coryell's intoxication.

As a result, Coryell fails to show prejudice because he cannot establish that the district court would have granted the suppression motion even with expert testimony on intoxication. The court explicitly stated that the expert testimony would not have affected its prior decision, since it observed his demeanor and considered his responses during the interview.

For these reasons, we find that the district court correctly decided to summarily deny Coryell's ineffective assistance of counsel claims raised in his K.S.A. 60-1507 motion. Accordingly, we affirm those rulings.

11

*The district court erred in summarily denying Coryell's claim based on newly discovered evidence.*

Coryell next argues the district court abused its discretion when it summarily denied his request for a new trial based on newly discovered evidence. In particular, Coryell attached to his motion a handwritten and signed letter alleging that Beachel overheard Urban confessing to another person that he was one who fired the shot that killed Cook. Coryell contends the court relied on an invalid basis to reject the new evidence, specifically that the court believed the evidence was not credible simply because it conflicted with the evidence presented at trial. Thus, he asks this court to remand for an evidentiary hearing to determine whether the newly discovered evidence warrants a new trial.

In response, the State contends that the facts alleged in the letter contradicted Coryell's entire defense strategy, which was that the shooting was accidental and a result of Coryell's intoxication that night. The State also points out that the trial evidence supported Coryell's version of the events and that his defense strategy partially succeeded because he was found guilty of the lesser included offense of second-degree intentional murder. For these reasons, the State argues the district court correctly ruled this evidence would not have changed the trial outcome given the weight of evidence establishing his guilt.

*The standard of review is abuse of discretion.*

To start, the parties cite different standards of appellate review, so some discussion on that point is warranted. As the State notes, appellate courts would generally exercise de novo review in the context of a summary denial of a K.S.A. 60-1507 motion. See *Trotter v. State*, 288 Kan. 112, 134, 200 P.3d 1236 (2009). But Coryell also correctly recognizes that appellate courts typically review an order denying a motion for new trial

12

based on newly discovered evidence for an abuse of discretion. *State v. Ashley*, 306 Kan. 642, 650, 396 P.3d 92 (2017); see also *Moncla v. State*, 285 Kan. 826, 839-40, 176 P.3d 954 (2008) (reviewing summary denial of claim of newly discovered evidence for an abuse of discretion, despite being raised in the context of a K.S.A. 60-1507 proceeding).

Upon reviewing the district court's decision, it appears as though the court treated Coryell's claim of newly discovered evidence as a motion for new trial, despite being raised in the context of a pro se K.S.A. 60-1507 motion. A district court has a duty to interpret a pro se pleading based on its substance and content rather than merely its title or labels. See *State v. Redding*, 310 Kan. 15, 18, 444 P.3d 989 (2019). This court exercises unlimited review over whether a district court properly construed a pro se pleading. 310 Kan. at 18.

The court began the "Conclusions of Law" section of its order—which it considered "Applicable to All Issues"—by stating:

> "Coryell has the burden to prove his K.S.A. 60-1507 motion warrants an evidentiary hearing; he must make more than conclusory contentions and must state an evidentiary basis in support of the claims or an evidentiary basis must appear in the record. [*Holmes*, 292 Kan. at 274]; [*Edgar v. State*, 294 Kan. 828, 836, 283 P.3d 152 (2012)]. Coryell has the burden of establishing the grounds for relief by a preponderance of the evidence. [Supreme Court Rule 183(g) (2020 Kan. S. Ct. R. 223)]."

But later, the district court discussed the newly discovered evidence claim using cases dealing exclusively with the denial of a motion for new trial, mainly *State v. Thomas*, 257 Kan. 228, 891 P.2d 417 (1995). In *Thomas*, the Kansas Supreme Court held "[a] defendant has no automatic right to a full evidentiary hearing by filing a motion for a new trial based on alleged newly discovered evidence." 257 Kan. at 233. The district court also determined that "[t]he Court can instead conduct a preliminary inquiry and determine whether there is a substantial basis for the claim." See *State v. Dunn*, 243 Kan.

13

414, 436, 758 P.2d 718 (1988) (comparing to procedure for motion under K.S.A. 60-1507).

We find the proper standard of review here is for an abuse of discretion because the district court treated Coryell's claim as a motion for new trial, just like in *Moncla*. 285 Kan. at 839-40. A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018). The moving party bears the burden of demonstrating an abuse of discretion. *Gannon v. State*, 305 Kan. 850, 868, 390 P.3d 461 (2017).

*The district court failed to conduct the proper legal analysis.*

When reviewing whether the district court should have held an evidentiary hearing before denying a movant's request for a new trial based on newly discovered evidence, appellate courts must consider whether:  (1) the motion alleges facts that do not appear in the original record and which, if true, would entitle the movant to relief; (2) the motion adequately identifies available witnesses whose testimony would support the allegedly new facts and demonstrate that the movant should receive a new trial; and (3) the movant's newly discovered evidence could have been produced at trial through the exercise of reasonable diligence. *Moncla*, 285 Kan. at 840.

Upon review, the district court failed to consider whether Coryell was entitled to an evidentiary hearing on his claim of newly discovered evidence under the appropriate inquiry from *Moncla*. Instead, the court found that Coryell's present showing—i.e., a letter attached to his motion—did not rise to the level of requiring a new trial because the alleged facts would not have changed the outcome given the trial evidence establishing Coryell as the person who shot Cook. The court determined that "there is no reasonable probability that *even if Beachel testified* as indicated in his letter, there would be different

14

outcome." (Emphasis added.) But to make that conclusion, the judge needed to assess the credibility of the newly proffered evidence, which did not happen here.

We examine the evidence, as the district court should have, based on *Moncla*'s three-part inquiry to determine whether Coryell should have received an evidentiary hearing on his claim of newly discovered evidence.

Under the first prong, we examine whether the motion alleges facts that do not appear in the original record and which, if true, would entitle the movant to relief. *Moncla*, 285 Kan. at 840. Ordinarily, a new trial is not warranted when newly proffered evidence merely tends to impeach or discredit the testimony of a witness. *State v. Richard*, 235 Kan. 355, 363, 681 P.2d 612 (1984).

The State contends that "whatever Everett Urban's actions were on the night of the crime, they were known to Coryell [because] they were present together at [the] scene of the crime when the murder happened." Moreover, Coryell's primary defense strategy was that the killing was accidental, so the State asserts that this allegedly new evidence would have only contradicted Coryell's defense and been inconsistent with Coryell's own statements to Special Agent Mark Kendrick, a KBI investigator, that he fired the gun accidentally when someone tossed it to him.

But our review of the written transcript of the interview between Coryell and Special Agent Kendrick reveals that Coryell told Kendrick he was having trouble recalling what had happened. Coryell's trial attorney also testified at the *Van Cleave* hearing that part of the intoxication defense was that Coryell could not recall the specific events on the night of the crime because of his severe intoxication and he may have been "convinced" that he was responsible.

15

Moreover, this court's decision on direct appeal relied heavily on Urban's testimony in its recitation of facts. Briefly, according to Urban, he and Coryell argued outside the bedroom about waking Cook and Campbell before Urban decided to leave. As he left, he turned and saw Coryell holding the gun and aiming it into the bedroom. Urban said he kept walking toward the front door but then he heard a gunshot, after which Coryell ran outside the house. But another witness testified that Urban told him he was "'right beside'" Coryell when he fired the shot. See *Coryell*, 2016 WL 757568, at *2.

It is clear from the transcript of Coryell's 60-1507 hearing that the district judge struggled with his responsibility to conduct an evidentiary hearing on these new claims. The judge repeatedly asked the State how he was supposed to analyze the newly discovered evidence. The State conceded that to determine whether the new evidence would have affected the outcome of the trial, the court would have to determine the credibility of the declarant, Beachel. The prosecutor opined, "[I]f you want to make a true credibility determination of this individual, we would need to have an evidentiary hearing." Defense counsel continued to push for an evidentiary hearing, and both the judge and the prosecutor conveyed their concern that if they did not conduct an evidentiary hearing on the new claim, the Court of Appeals might just send it back for the court to conduct a hearing. They were correct to have that concern.

Simply put, because the district court made no specific credibility findings, deference to the district court's implied credibility determination cannot serve as the basis for this court's decision. See *Trotter*, 288 Kan. at 137. Without a full evaluation of Beachel's credibility, this court lacks relevant information that could help in determining whether Coryell would have a right to relief. Testimony from Beachel that Urban confessed to firing the weapon and believed he "got away with it" would help undermine Urban's credibility and also potentially exonerate Coryell. This satisfies the first prong of the *Moncla* test. 285 Kan. 840.

16

As for the second prong—whether the motion adequately identifies available witnesses whose testimony would support the allegedly new facts—Coryell's motion named Beachel as a potential witness and his appointed counsel also mentioned the possibility of calling Coryell's previous trial attorney and another individual mentioned in the letter to support the allegedly new facts. So the second prong is also satisfied. *Moncla*, 285 Kan. at 840.

Finally, on the third prong, the district court found, and the State concedes, that Coryell could not have produced the letter at trial because the conversation would have occurred months later.

As a result, we conclude the district court abused its discretion by committing an error of law in denying a hearing on Coryell's newly discovered evidence claim. Based on the legal analysis required by our Supreme Court in *Moncla*, the merits of this claim require an evidentiary hearing to determine whether Beachel's testimony about the conversation he allegedly overheard is credible and could raise a reasonable probability of a different outcome.

Affirmed in part, reversed in part, and remanded for an evidentiary hearing on Coryell's motion for new trial.