NOT DESIGNATED FOR PUBLICATION

No. 124,438

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KELLY WREN,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Montgomery District Court; F. WILLIAM CULLINS, judge. Opinion filed September 23, 2022. Affirmed.

*Sam S. Kepfield*, of Hutchinson, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., SCHROEDER and WARNER, JJ.

PER CURIAM: Kelly Wren appeals the summary denial of his K.S.A. 60-1507 motion, in which he raised ineffective assistance of counsel claims related to his guilty plea. Finding no error, we affirm.

FACTUAL AND PROCEDURAL HISTORY

In June 2016, the State filed a multi-count complaint in Montgomery County Case No. 16CR317 (Case 1) charging Wren with aggravated assault of a law enforcement officer while using a deadly weapon; aggravated battery of a law enforcement officer,

1

intentionally causing great bodily harm with a deadly weapon; two counts of criminal damage to property; fleeing or attempting to elude a law enforcement officer by engaging in reckless driving; reckless driving; residential burglary with intent to steal a firearm; and theft of property.

At a preliminary hearing before District Judge F. William Cullins, the State presented testimony from several witnesses to support the charges. One witness testified he was pulling into his driveway and saw Wren in a red pickup truck—which another witness had reported stolen the same day—backed up to a utility trailer on his property. He next observed Wren's brother running out from inside the house. After the man called 911, Wren and his brother fled in the truck, running over some farming equipment in his yard in the process. The man noticed several items missing from his home, including a hunting crossbow and a black powder rifle. An officer also testified that the red pickup pulled out in front of him on the highway, so he turned on his lights and began pursuing the vehicle. During the chase, the pickup truck drove erratically and narrowly missed several vehicles, as well as driving through fields, knocking down fences, and at one point the truck drove towards the officer. The officer eventually managed to end the pursuit and take Wren and his brother into custody. After considering this evidence and hearing arguments from the parties, the court bound Wren over on all the charges, with the lone exception of the aggravated battery charge since it was not supported by the evidence.

Following the preliminary hearing, Wren entered a plea agreement by which he would plead no contest to the remaining charges, as well as another residential burglary charge that would be consolidated from another case (Case 2). In exchange, the State agreed to recommend the district court impose consecutive sentences for the aggravated assault on a law enforcement officer charge and one of the residential burglary charges—with all other counts running concurrently—for a controlling prison sentence of 42

2

months. In the written plea agreement, Wren acknowledged "that the sentencing judge is not bound to follow the plea agreement. The judge may impose any lawful sentence."

At a plea hearing before District Judge Gary House, the district court confirmed that Wren had gone over the plea agreement with his appointed counsel, Heath Lampson. Wren also acknowledged that he was satisfied with Lampson's representation at that time, had not been threatened or coerced into entering the plea, and was not under the influence of any medications. Likewise, Wren acknowledged he intended to plead no contest to the charges as amended.

When Judge House asked whether there was a factual basis for the charges, Lampson responded, "There is, Your Honor." The court then asked the State if a preliminary hearing had been held, to which the State explained that Judge Cullins presided over the preliminary hearing in Case 1, but that no preliminary hearing was held for the charge from Case 2. The court thus found "that the preliminary hearing determined a factual basis for the other charges," and asked the State to give a factual basis for the charge in Case 2.

The State explained that in Case 2 Wren entered a residence and took some property which was later found at a game store in Oklahoma, where Wren was seen selling property. The State added that one of the criminal damage to property charges in Case 1 was not addressed at the preliminary hearing because it was a misdemeanor, so it explained that property belonging to a named victim in the case was damaged during the chase. The district court found there was a factual basis for the charges, found Wren guilty, and set the matter for sentencing.

Judge Cullins presided over the sentencing in December 2016. Although the parties recommended the agreed-upon sentence of 42 months' imprisonment, the court chose to impose a 60-month sentence instead by running four of the charges

3

consecutively, with all other charges run concurrently. While the court was announcing the sentence, Wren interjected to ask, "So Count 1 and 2 are the only ones that's running consecutive," to which the court explained that it was not following the plea agreement and that it had advised Wren of that possibility. Wren responded he "wasn't aware of that." The court countered, "Yes, you were. Because I told you that at the time I took your plea."

About a week later, Wren filed a pro se motion to withdraw his plea, alleging his trial counsel misled and coerced him into accepting the plea. Wren also claimed Judge Cullins improperly "overruled" Judge House's decision to accept Wren's plea by deviating from the plea agreement.

The district court took up Wren's motion at a hearing in March 2017. The presiding judge was Judge Cullins. Wren was represented at the hearing by Philip J. Bernhart.

Wren testified at the hearing on his motion that he did not recall Judge House advising him that the sentencing judge would not be bound by the plea agreement. He also claimed that Lampson advised him the morning of the sentencing that there would be no registration requirement because "there was no court finding of a deadly weapon." Wren said he requested discovery from Lampson multiple times and never received it. Wren also said he did not receive a copy of the amended complaint until after being sentenced. Wren decided to accept the plea agreement because Lampson told him the sentencing judge would follow the recommendations "since I was taking a high-profile case off the docket." Wren believed that the 42-month sentence would be binding because that was the amount stated in the plea agreement. Wren acknowledged that he went over the plea agreement with Lampson and had not previously indicated any concerns or dissatisfaction with the terms before entering the plea.

4

At one point, Judge Cullins began questioning Wren about his belief that the court was bound to follow the terms of the plea agreement by referring to a plea hearing for case No. 16CR428 (Case 3)—another case involving Wren over which Judge Cullins presided. Wren and his counsel explained that Wren was not trying to withdraw his plea in Case 3, only in Case 1. Judge Cullins countered that he was "confident" he had advised Wren in Case 3 that he would not be bound by the plea agreement, so Wren would have acquired that knowledge before Judge House's acceptance of the plea in Case 1. Wren also acknowledged signing the plea agreement, which included a provision stating that the court would not be bound by the plea agreement.

Lampson also testified at the hearing, first explaining that he represented Wren in several cases around the same time, including Case 1 and Case 3. By Lampson's recollection, these two cases were unrelated, and the parties had reached a resolution in Case 1 by the time Case 3 was filed. Lampson could not remember specifically but said that the plea negotiations in Case 1 did not involve any charges from Case 3. Lampson recalled that the parties reached a plea agreement on a Friday afternoon and decided to put it on the record promptly, which is why Judge House conducted the plea hearing instead of Judge Cullins. Lampson testified that he discussed the sentencing deal with Wren, specifically that the court would not be bound by the agreement. Lampson also recalled discussing the registration requirement, noting that he advised Wren he would need to register if he pled to a person felony involving the use of a deadly weapon.

After considering the evidence, the district court denied Wren's motion to withdraw his plea. In particular, the court found Wren's assertion that the court failed to advise it was not bound by the plea agreement to be "wholly inaccurate." Because Judge Cullins had conducted the plea hearing in Case 3, the court noted that Wren would have been advised before being sentenced in Case 1 that the plea agreement was not binding on the court as to sentencing. But more importantly, the court found that Wren's written plea agreement unequivocally advised him that the court was not bound as to sentencing.

5

Wren filed a direct appeal of his sentence and was represented by Kristen Patty. On appeal, Wren argued the district court erred by: (1) not adhering to the plea agreement; (2) imposing a 60-month prison sentence; (3) using his prior criminal history to increase his sentence without submitting his criminal history to a jury; (4) ordering some of his sentences to run consecutively; (5) failing to notify him of his duty to register as a violent offender; and (6) assessing Board of Indigents' Defense Services fees without considering his financial resources and the burden imposed by the fees on the record. This court rejected Wren's first four arguments related to his sentence but agreed with him on the remaining issues. *State v. Wren*, No. 118,046, 2018 WL 3077193, at *1-3 (Kan. App. 2018) (unpublished opinion). Relevant to this appeal, with respect to the offender registration error, the panel concluded that the district court's error entitled him to no relief at that stage of the proceedings. 2018 WL 3077193, at *2.

In July 2018, Wren filed a pro se K.S.A. 60-1507 motion, raising several ineffective assistance of counsel claims, as well as challenging his registration as a violent offender. In a memorandum attached to the motion, Wren alleged deficient performance in the handling of his postsentencing motion to withdraw his plea, specifically challenging his (1) Lampson's representation during plea negotiations and at the plea hearing, (2) Bernhart's representation during the hearing on the motion to withdraw plea, and (3) Patty's representation on direct appeal. Wren also contended that he should not have to register as a violent offender because the record from the plea hearing did not reflect that he used a deadly weapon when committing his crimes.

In a supporting memorandum, Wren asserted that Lampson falsely stipulated at the plea hearing that there was a factual basis given for the offenses at the preliminary hearing. He also asserted the court never asked him to state a factual basis for the crimes committed, nor did the court provide him with a copy of the complaint. Wren also alleged that after he expressed a desire to withdraw his plea at sentencing, Lampson failed to inquire why Wren wanted to withdraw his plea. Wren argued that if these steps would

6

have been taken, he could have pursued a motion to withdraw for good cause (the standard of review before a sentence is imposed) instead of to correct a manifest injustice (the standard of review after a sentence has been imposed). Lastly, Wren argued that Lampson failed to contest the plea colloquy given by the district court at the plea hearing or argue the court violated K.S.A. 22-3210.

As for Bernhart, Wren argued that Bernhart failed to amend Wren's pro se motion to withdraw plea to include any ineffective assistance of trial counsel claims described above as grounds to withdraw the plea. Likewise, he argued that Patty was ineffective for failing to raise these ineffective assistance claims related to Lampson and Bernhart's performance, as described above. Lastly, Wren argued that the district court's failure to make a finding on the record that he committed his crimes using a deadly weapon deprived the court of jurisdiction to require him to register as a violent offender.

The district court denied Wren's K.S.A. 60-1507 motion in a written ruling after an initial review. In short, the court rejected Wren's ineffective assistance claims after concluding that none of Wren's assertions were supported by the record. In addition, the court noted that Wren already raised his registration challenge on direct appeal.

Wren timely appealed.

ANALYSIS

Wren argues he was entitled to an evidentiary hearing on his ineffective assistance of counsel claims. All other claims are waived. See *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018) (issues not briefed are considered waived or abandoned); see also *State v. Lowery*, 308 Kan. 1183, 1231, 427 P.3d 865 (2018) (a point raised only incidentally in a brief and not argued in it is also considered abandoned).

7

A district court may summarily deny a K.S.A. 60-1507 motion without holding an evidentiary hearing if the movant fails to show they are entitled to relief. *Moncla v. State*, 285 Kan. 826, 830, 176 P.3d 954 (2008). As the movant, Wren bears the burden of showing he is entitled to an evidentiary hearing by making more than conclusory contentions. He must set forth an evidentiary basis to support those contentions or the basis must be evident from the record. See *Thuko v. State*, 310 Kan. 74, 80, 444 P.3d 927 (2019).

To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish (1) that the performance of defense counsel was deficient under the totality of the circumstances, and (2) that the deficient performance prejudiced the defendant. *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014) (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 [1984]).

Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury. *State v. Sprague*, 303 Kan. 418, 426, 362 P.3d 828 (2015). In considering deficiency, "there is a strong presumption counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014). "An attorney's strategic decisions are essentially not challengeable if the attorney made an informed decision based on a thorough investigation of the facts and the applicable law." *Wilson v. State*, 51 Kan. App. 2d 1, 14, 340 P.3d 1213 (2014). "'To show prejudice, the defendant must show a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Sprague*, 303 Kan. at 426.

8

Wren's claims are interrelated because they all stem from allegations of deficient performance based on the representation he received related to his plea agreement. Each of Wren's claims will be addressed separately.

*Ineffective assistance of trial counsel*

Wren claims that his trial counsel, Lampson, was ineffective for (1) failing to challenge the factual basis given for the plea, and (2) failing to take the proper steps to allow him to withdraw the plea *before* being sentenced.

Wren's entire argument regarding the factual basis given for the plea is "[t]he prosecutor gave a short factual basis for the charges." This is insufficient to establish a claim for relief on this issue. See *In re Marriage of Williams*, 307 Kan. at 977 (issues not briefed are considered waived or abandoned); see also *Lowery*, 308 Kan. at 1231 (a point raised only incidentally in a brief and not argued in it is also considered abandoned).

Rather, Wren seems to only be arguing that his trial counsel was ineffective for not ensuring that he fully understood the terms of his plea agreement, specifically whether Wren understood that the court could deviate from the plea agreement at sentencing. We are not persuaded that Wren was entitled to an evidentiary hearing on this claim.

As Wren acknowledges, a review of the record shows that paragraph 10 of the written plea agreement he signed stated, "the sentencing judge is not bound to follow the plea agreement [and] may impose any lawful sentence." In addition, paragraph 11 stated:

> "I know the sentence I will receive is solely a matter within the control of the judge, and I know that regardless of the plea agreement . . . the court is not bound to follow the agreement. . . . I understand that if I enter a plea of guilty or nolo contendere

9

(no contest), the court may impose against me any and all of the maximum penalties and maximum fines."

Furthermore, Wren admitted at the plea hearing that he reviewed the plea agreement with Lampson before signing it and understood its terms. The only indication that he did not understand that the sentencing judge could deviate from the agreed-upon sentence came after the court announced its intention to impose a longer term of imprisonment at sentencing. Put simply, the record betrays any assertion that Wren did not understand the court was not bound to follow the plea agreement at sentencing.

Moreover, Wren made the same argument when he moved to withdraw his plea. The district court rejected it, even after considering Wren's testimony, and this court affirmed that ruling. *Wren*, 2018 WL 3077193, at *1. So in addition to lacking any support in the record, his claim is successive. K.S.A. 2021 Supp. 60-1507(c).

*Ineffective assistance of postconviction counsel*

Wren next asserts his postconviction counsel was ineffective for failing to amend his pro se motion to withdraw plea to include a claim about a deficient plea colloquy. But Wren fails to elaborate further in his brief, simply asserting that Bernhart was ineffective and admitting that nothing in the record suggests Wren had discussed such a claim with Bernhart. As a result, Wren has abandoned his ineffective assistance of postconviction counsel claim made in his K.S.A. 60-1507 motion by failing to properly brief it.

*Ineffective assistance of appellate counsel*

Lastly, Wren contends his appellate counsel was ineffective for failing to include claims of ineffective assistance related to his trial and postconviction counsel on direct appeal. Again, Wren abandons this claim by failing to fully and adequately explain how

10

Patty's performance was deficient or prejudiced him. As a result, we conclude Wren abandoned any argument about his appellate counsel's ineffectiveness as well. Even so, Wren's failure to establish any of his prior claims likewise defeats his claim related to his Patty's performance.

After reviewing the motions, files, and records of the case, we find that the district court did not err in summarily denying Wren's motion. Wren has failed to meet his burden to show that he was entitled to an evidentiary hearing on his K.S.A. 60-1507 motion. He makes nothing more than conclusory contentions and fails to set forth an evidentiary basis to support those contentions or show where they are evident from the record. See *Thuko*, 310 Kan. at 80.

Affirmed.