NOT DESIGNATED FOR PUBLICATION

No. 124,447

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

GREGORY E. BELL,
*Appellant,*

v.

STATE OF KANSAS,
*Appellee.*

MEMORANDUM OPINION

Appeal from Sedgwick District Court; J. PATRICK WALTERS, judge. Opinion filed December 23, 2022. Affirmed.

*David L. Miller*, of The Law Office of David L. Miller, of Wichita, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before CLINE, P.J., ATCHESON and COBLE, JJ.

PER CURIAM: Following a shooting at a nightclub and a jury trial, Gregory E. Bell was convicted of multiple felony charges, including the voluntary manslaughter of Antonio Judice. Bell unsuccessfully appealed his conviction, then subsequently filed a K.S.A. 60-1507 motion and the district court summarily denied relief. On appeal, this court affirmed the lower court's decision in part and remanded in part for an evidentiary hearing. After conducting an evidentiary hearing, the district court again found that Bell was not entitled to relief. Bell timely appealed and this court affirmed the district court's decision.

1

Bell then filed a second K.S.A. 60-1507 motion—the subject of this appeal—alleging numerous claims, including ineffective assistance of prior appellate counsel and K.S.A. 60-1507 motion counsel and his claimed actual innocence. Following a nonevidentiary hearing on Bell's motion for limited postconviction discovery, the district court summarily denied relief on both his motion for discovery and his K.S.A. 60-1507 motion, finding his latter motion to be successive and procedurally barred. Bell now appeals the district court's summary denial of both motions. On our review, the motions, files, and case record do not support Bell's recent K.S.A. 60-1507 claims but support the district court's findings. Accordingly, we affirm the district court's decision.

FACTUAL AND PROCEDURAL BACKGROUND

To fully analyze Bell's current claims, an in-depth review of the prior proceedings is necessary. First, the relevant facts underlying Bell's criminal convictions are set forth in this court's previous opinion in *State v. Bell*, No. 101,903, 2011 WL 3444200, at *1 (Kan. App. 2011) (unpublished opinion):

"In the early morning hour[s] of February 22, 2008, Lightning Joe's, a nightclub in Wichita, had just closed and its patrons were congregating in the parking lot. Judice and [Maurice] Peters were in the parking lot when Bell's sisters, who were angry at Judice, confronted him. This was the second altercation within a relatively short period of time between Bell's sisters and Judice. What happened next was controverted, but the unfortunate result was that Judice was shot and killed and Peters was wounded.

"At trial, more than 30 witnesses testified to their versions of the events surrounding the shootings. Many of the events were recorded on video surveillance cameras both inside and outside the club but the video recordings and numerous still images taken from them were not included in the record on appeal. Moreover, none of the trial exhibits were added to the record.

"One consistent fact at trial was that at about the time of Judice's altercation with Bell's sisters in the parking lot, a white or silver sedan drove up near Judice. Testimony

2

indicated that Bell was a passenger and his brother, Arthur Bryant, was the driver of the sedan. Bell and Bryant may or may not have exited the sedan, but William Banks testified, with some equivocation, that Bell shot Judice. On the other hand, another witness, Steven Espinoza, testified that Bryant shot Judice. Judice died a few hours after the shooting.

"At trial, Peters testified with some equivocation that Bell had shot him from the passenger side of the sedan. Other witnesses testified the passenger in the sedan (sometimes identified as Bell) was shooting as the sedan drove away from the scene.

"At the conclusion of the trial, the jury found Bell guilty of the voluntary manslaughter of Judice, attempted voluntary manslaughter, and (alternatively) aggravated battery of Peters, and criminal possession of a firearm."

The district court sentenced Bell to 274 months in prison. This court affirmed Bell's convictions on direct appeal. See *Bell*, 2011 WL 3444200, at *20. Our Supreme Court denied Bell's request for review on February 17, 2012.

*First K.S.A. 60-1507 Motion*

Bell then filed his first K.S.A. 60-1507 motion, claiming ineffective assistance of trial counsel and direct appellate counsel, and prosecutorial misconduct. After two of Bell's attorneys withdrew, the district court appointed another attorney to represent Bell on his motion. Bell filed multiple pro se requests for discovery in connection with this motion. The district court conducted a nonevidentiary hearing during which a large part of Bell's arguments related to whether the State had provided Bell and his trial counsel with all the video evidence from the nightclub and whether trial counsel had reviewed the necessary video footage with Bell prior to trial. *Bell v. State*, No. 111,662, 2015 WL 6832758, at *2 (Kan. App. 2015) (unpublished opinion). This video evidence included the full security video from the night of the shooting—not of the shooting itself, but video from multiple cameras positioned at the entrance and outside the nightclub (Trial Ex. 30-A), and an edited version played during trial (Trial Ex. 30-B). *Bell*, 2015 WL 6832758, at

3

*2. A second hearing was held that focused on the video evidence where the State and Bell's 60-1507 counsel agreed the State had given Bell the entirety of the video evidence. The district court ultimately held that Bell was not entitled to relief.

Initially, Bell appealed pro se, then his appointed counsel later filed a notice of appeal on Bell's behalf. This appointed attorney later withdrew, and other appointed counsel entered for Bell on appeal. On review of the appeal, a panel of this court affirmed the decision of the district court on all except one of Bell's claims. The panel remanded the case for an evidentiary hearing to determine whether trial counsel's failure to call Bell's sisters and cousin was part of a reasonable trial strategy or constituted ineffective assistance of counsel. *Bell*, 2015 WL 6832758, at *6. On remand, after conducting an evidentiary hearing, during which Bell was represented by counsel, and the three women testified, and considering the written and oral arguments of the parties, the district court found Bell was not entitled to relief on his ineffective assistance of counsel claims.

Bell timely appealed this final resolution of his first K.S.A. 60-1507 motion and appellate counsel was appointed. A panel of this court ultimately affirmed the district court, finding the district court's conclusion that trial counsel's decision not to call the three women as witnesses was a legitimate trial strategy supported by substantial competent evidence. See *Bell v. State*, No. 118,812, 2019 WL 1976954, at *6 (Kan. App. 2019) (unpublished opinion). The Kansas Supreme Court denied Bell's petition for review on December 31, 2019. 309 Kan. 1347.

*Current K.S.A. 60-1507 Motion*

Eleven months later, on November 20, 2020, Bell filed his second and present K.S.A. 60-1507 motion. This motion alleges ineffective assistance of his first 60-1507 counsel, Chris Garcia, for failing to review the Court of Appeals decision on Bell's direct appeal and not amending his first K.S.A. 60-1507 petition to add direct appellate counsel

4

Jessica Kunen's failures to establish a sufficient appellate record. Bell also claims his first 1507 counsel was ineffective in failing to obtain an expert to reconstruct the crime scene. He also argues his first postconviction appellate counsel, Ryan Eddinger, inappropriately abandoned some issues raised in his first 60-1507 motion and failed to petition the Kansas Supreme Court for review. Bell maintains he was denied a fair trial under the United States Constitution due to cumulative error and that he is actually innocent. Bell claims his actual innocence constitutes an exceptional circumstance, which should grant him an evidentiary hearing on this second K.S.A. 60-1507 motion.

Bell attached to his second K.S.A. 60-1507 motion several exhibits, including the affidavits of Espinoza (who testified at trial); LaQuita Bell and Rayshon Bell (who testified at the May 18, 2017 evidentiary hearing on the prior remand); and Brian Lee, who contended he was present during the nightclub shooting and did not see Bell with a firearm, yet he was never contacted to testify at trial. The attachments also included an investigation synopsis from the Kansas Department of Corrections allegedly pointing the finger at Arthur Bryant as the shooter, and an incident report of 911 calls and officer statements which Bell claims would have identified witnesses to show he was not the shooter.

Bell's appointed counsel on the second K.S.A. 60-1507 motion filed a request for discovery, seeking a "full copy of the discovery previously provided to trial counsel," including any statements given by Bell; any physical examinations of anyone relevant to the case; mental examinations of the victim, witnesses, and Bell; any evidence "material to the claims raised in the K.S.A. 60-1507 petition including all ballistic reports and video evidence from Lightning Joe's"; prosecution witness statements and polygraph results; and police reports.

5

The State objected to the discovery motion arguing that the request was overly broad and failed to identify specific "items of discovery and a showing of the necessity of those items to protect [Bell's] substantial rights." In his reply brief and during the nonevidentiary hearing, Bell explained that his request was not for full discovery, but for specific items required by a forensic ballistics expert to review the case, reexamine the evidence, and reconstruct the scene of the shooting.

During the nonevidentiary hearing, the district court denied Bell's motion for discovery and dismissed the second K.S.A. 60-1507 motion as successive. The district court found these claims "should have been raised at trial, should have been raised on appeal, and they most definitely should have been raised at the first 1057." Bell filed a motion to reconsider which largely rehashed the arguments in his original K.S.A. 60-1507 motion. Bell argued that Peters' testimony at trial was "contradicted by the ballistics and witnesses who were never interviewed by trial counsel or called during trial." The district court, after another nonevidentiary hearing, denied the motion to reconsider.

Bell timely appeals.

THE DISTRICT COURT DID NOT ERR IN SUMMARILY
DENYING BELL'S K.S.A. 60-1507 MOTION

On appeal, Bell argues that the district court erred in summarily denying this second K.S.A. 60-1507 motion without holding an evidentiary hearing to allow him to establish the ineffective assistance of counsel and actual innocence claims. Bell also asserts that the district court abused its discretion when it denied his motion for postconviction discovery.

*Standard of Review*

Our principal task is to determine whether Bell's claims warranted a substantive hearing by the district court. When reviewing his K.S.A. 60-1507 motion, the district court had three options:

> """(1) The court may determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (2) the court may determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held. If the court then determines there is no substantial issue, the court may deny the motion; or (3) the court may determine from the motion, files, records, or preliminary hearing that a substantial issue is presented requiring a full hearing."' [Citations omitted.]" *State v. Adams*, 311 Kan. 569, 577-78, 465 P.3d 176 (2020).

The standard used by our court on review depends upon the option utilized by the trial court. *Beauclair v. State*, 308 Kan. 284, 293, 419 P.3d 1180 (2018). Because here the district court chose option one and summarily dismissed Bell's K.S.A. 60-1507 motion, we conduct a de novo review to determine whether the motion, files, and records of the case conclusively establish that he was not entitled to relief. *Beauclair*, 308 Kan. at 293.

But in order to receive a hearing on the merits of his claims, Bell must have cleared certain procedural hurdles. The district court found that, on the record before it, Bell failed to overcome the procedural hurdles to allow him to reach an evidentiary hearing. Two such procedural hurdles exist, under K.S.A. 60-1507(c) and (f), to prevent a K.S.A. 60-1507 motion from being heard: timeliness and successiveness. Each obstacle must be overcome.

*Bell's actual innocence claim does not overcome the procedural bar of successiveness, so we do not reach the timeliness issue.*

Bell submits that the instant motion—his second—is both untimely and successive, but argues he overcomes both procedural bars. He asserts that his claim of actual innocence is a gateway that both constitutes exceptional circumstances to excuse his successive K.S.A. 60-1507 motion and establishes manifest injustice to file an untimely motion.

*Successiveness*

We first address the successiveness bar to Bell's motion. It is uncontested by either party that Bell's second K.S.A. 60-1507 motion is successive. "Under K.S.A. 60-1507(c), a sentencing court is not required to entertain a second or successive motion for similar relief on behalf of the same prisoner." *Beauclair*, 308 Kan. at 304; see Supreme Court Rule 183(d) (2022 Kan. S. Ct. R. at 242). "A movant in a K.S.A. 60-1507 motion is presumed to have listed all grounds for relief, and a subsequent motion need not be considered in the absence of a showing of circumstances justifying the original failure to list a ground." *State v. Trotter*, 296 Kan. 898, Syl. ¶ 2, 295 P.3d 1039 (2013).

To avoid the dismissal of a successive K.S.A. 60-1507 motion, the movant bears the burden of establishing exceptional circumstances. *Beauclair*, 308 Kan. at 304. Exceptional circumstances are unusual events or intervening changes in the law that prevented the defendant from raising the issue in a prior K.S.A. 60-1507 motion. *Beauclair*, 308 Kan. at 304. Exceptional circumstances can include ineffective assistance of counsel claims and, potentially, a colorable claim of actual innocence. *Beauclair*, 308 Kan. 284, Syl. ¶ 2 ("A colorable claim of actual innocence based on a crime victim's recantation of the testimony that forms the basis for the charge against a defendant qualifies as an unusual event that prevented the defendant from raising the issue

8

previously, and it excuses the procedural bar of successiveness under K.S.A. 60-1507[e]."). See *Harris v. State*, No. 122,314, 2021 WL 4352526, at *5 (Kan. App. 2021) (unpublished opinion), *rev. denied* 316 Kan. ___ (2022); *State v. Sanders*, No. 118,027, 2018 WL 3797049, at *5 (Kan. App. 2018) (unpublished opinion).

The Kansas Supreme Court has recognized two types of actual innocence claims: one substantive, and one procedural. *Beauclair*, 308 Kan. at 297-301. In the first, a substantive actual innocence claim, the movant claims he is actually innocent despite a fair and error-free trial which concluded in a guilty verdict. The second, a procedural innocence claim, is a claim that constitutional errors deprived the jury of critical evidence which would have established the movant's innocence. *Beauclair*, 308 Kan. at 298-300 (citing *Schlup v. Delo*, 513 U.S. 298, 314-16, 115 S. Ct. 851, 130 L. Ed. 2d 808 [1995]). Bell claims actual innocence as a gateway to overcome the procedural bar of successiveness, and contends evidence was withheld from his trial which would have proven his innocence. So, his actual innocence claim is of the second type.

Bell's burden, then, for his procedural claim is this: The evidence he presents as part of his actual innocence claim must establish sufficient doubt about his guilt, and to be credible, he must ""'support his allegations . . . with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial[,]'"" although these types of evidence are not exhaustive. *Beauclair*, 308 Kan. at 299-300 (quoting *Schlup*, 513 U.S. at 324). "'To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Beaclair*, 308 Kan. at 300 (quoting *Schlup*, 513 U.S. at 327). Bell's burden at this "gateway stage is merely to demonstrate 'that more likely than not any reasonable juror would have reasonable doubt.'" *Beauclair*, 308 Kan. at 301 (quoting *House v. Bell*, 547 U.S. 518, 538, 126 S. Ct. 2064, 165 L. Ed. 2d 1 [2006]).

Utilizing these standards, then, we examine Bell's arguments. He mainly focuses on the theory that Peters—a significant witness at trial who identified Bell as the shooter—is the true shooter who killed Judice, which differs from trial counsel's strategy of pinning Bryant as the shooter. In support, Bell names various pieces of evidence he believes was either missing from or has changed since trial. He first argues that the surveillance video contradicts some of the trial witnesses' testimony. At the time of the instant K.S.A. 60-1507 motion, Bell contended he was unable to access or play the State's copy of the surveillance video from Lightning Joes and sought a working copy, then later noted counsel was able to access and play the video.

Reviewing the surveillance footage on its own, however, shows Bell is merely speculating about what is simply lacking from that footage. Given the available video evidence and the testimony of witnesses, it appears the combined surveillance video does not directly or plainly show the shooting, nor does it provide a clear line of sight of all the characters at play at once. Bell's argument, then, suggests a creative fiction woven into the gaps of the surveillance video. Most importantly, the video sought by Bell in his motions, State's Exhibit Nos. 30-A and -B, was played during the trial and the jury had the opportunity to examine, weigh, and question the video evidence in comparison to witness testimony before reaching their verdict. The surveillance video simply does not, at this juncture, constitute new exculpatory evidence.

Bell also relies on new affidavits from his sisters, LaQuita and Rayshon, and cousin Gnett Johnson's statements, to claim that Peters was the shooter who killed Judice. The testimony of the three women was not taken at trial, however, all three testified during the evidentiary hearing following the remand by this court in the previous K.S.A. 60-1507 proceedings.

Although the testimony of the three women at the evidentiary hearing was taken to determine whether trial counsel's strategy to not call them as witnesses created ineffective assistance of counsel, none of the testimony definitively exonerate Bell or provided unequivocal proof that someone else was the shooter. All three women stated that they heard someone at the scene yell, "Maurice, quit shooting," or words to that effect, but did not actually see Peters shoot Judice. Although the testimony of the women could support Bell's version of events, the district court found them to lack credibility. Furthermore, Bell's own testimony was inconsistent with that of his cousin and sisters, because the women each testified he was inside the bar when shots were fired; yet Bell testified he was outside the bar in a crowd that was around the fight between the women and Judice when shots were fired. The surveillance video similarly contradicted their testimony by showing Bell outside the building at the time of the shooting. Given the district court and this court's prior consideration of the women's testimony, and the contradicting and discredited nature of that testimony, their statements are not such trustworthy eyewitness accounts that they now establish sufficient doubt about his guilt.

Bell also asserts that incident reports from law enforcement officers were not previously introduced as evidence and support the claim that Peters was the shooter. Specifically, Bell claims that the law enforcement incident reports uncovered two possible witnesses, Kevin Herd and Casey Haines, who were staying in motels near the bar and could corroborate the testimony of his sisters and cousin. The incident reports note that the officers took statements from Herd and Haines who each heard people yelling the name "Maurice." But this is not new evidence, because Bell specifically referenced these statements in the prior evidentiary hearing on remand of his first K.S.A. 60-1507 motion, arguing his trial counsel should have called them as witnesses and Bell had discussed their potential testimony with his trial counsel. And, even if the evidence were new, and corroborated hearing someone yell "Maurice"—it is logical that someone who heard the shots, or saw Peters being shot or shooting, may have yelled "Maurice."

But this does not corroborate Bell's theory in such a significant way that it would warrant an evidentiary hearing. During trial, there was considerable evidence presented that Peters was one of what could have been multiple shooters; in fact, the ballistics evidence suggested there were at least three guns fired during the incident. Because the jurors were already faced with evidence of multiple potential shooters, the statements regarding "Maurice" neither prove nor disprove whether Bell killed Judice in such a critical way as to provide sufficient doubt about Bell's guilt.

Next, Bell asserts that surveillance video and new affidavits dated in 2021 from two inmates—Denoveous Adams and Sergio Little—impeach Banks' trial testimony and support Bell's actual innocence claim. These statements recount a 2008 jailhouse conversation among Adams, Little, and Banks where, according to Adams, Banks stated that "he was there the night of the shooting of Antonio Judice" and Bell "'didn't have anything to do with that shooting.'" Little's affidavit suggests Banks said he only spoke to the police the night of the shooting so that he would not get charged with a crime himself, and he "really didn't even see the whole incident."

During trial, Banks' identification of Bell was not definite, but equivocal. He identified Bell as "look[ing] like" the man walking away from the shooting of Judice and getting into a vehicle and as the passenger shooting from the white vehicle but later positively identified Bell in the courtroom as the shooter. Then, on cross-examination, agreed he thought the shooter was Bell but could not be sure. But Banks testified he did not see who fired the first shot, he did not see Judice or Peters get shot, and he admitted that Peters was also shooting. Banks was thoroughly cross-examined by Bell's trial counsel, emphasizing the amount of alcohol Banks had consumed the night of the shooting and pointing out discrepancies between Banks' statements to police the night of the shooting, his testimony at Bell's preliminary hearing, and his trial testimony. And, in Bell's first K.S.A. 60-1507 motion, as part of his ineffective assistance of counsel claim,

12

he argued his trial counsel failed to impeach the testimony of Banks. After the district court denied his motion, a panel of this court found "Banks never testified to the precise location of parties at the time of the shooting, and trial counsel did an excellent job of impeaching Banks' testimony." *Bell*, 2015 WL 6832758, at *9.

Although the substance of Banks' trial impeachment differs slightly from the impeachment Bell now suggests, under these circumstances, the potential for impeachment of Banks through Adams' and Little's affidavits does not provide a colorable claim of innocence. Banks' testimony was not only questioned before the jury but has been inconsistent since his initial statement to police. Even assuming that Adams' and Little's affidavits are true, Banks' trial testimony was less than definite. Although he identified Bell in the courtroom, he also testified that he could not definitively identify the shooter because he did not clearly see who was in the car where the shots came from and testified Bell "looked like" the shooter in the passenger seat. And as stated above, the video surveillance clips were viewed by the jury, as was Banks' trial testimony, and together they do not present new evidence that demonstrates it is more likely than not a reasonable juror would have reasonable doubt on the basis of Banks' impeachment.

Bell next argues that witness Kevin Singleton's trial testimony is inconsistent with the surveillance video and is potentially exculpatory evidence. Singleton testified at trial that he was in the parking lot during the shootings and identified Bell as a passenger hanging out the window of a silver car, shooting to the rear of the vehicle. Bell argues that the video evidence does not place Singleton in the position Singleton testified to be in during the shooting and could impeach him because he could not have possibly observed what he testified to at trial.

A review of Singleton's trial testimony reveals his description of his location during the incident was confusing, so the prosecutor asked him to show his location on a

13

map. On cross-examination, Bell's trial counsel repeatedly questioned Singleton's inconsistent statements to police which contradicted his trial testimony and noted Singleton's alleged intoxication during the event. Both Singleton and Detective Harty testified regarding Singleton's earlier police interview, during which the officer and Singleton watched surveillance videos together to better understand Singleton's recollection of events. Detective Harty was also questioned at trial regarding Singleton's inconsistent statements. Although there may be an incongruity between Singleton's testimony and the placement of Singleton in the video clips, discrepancies were presented during trial and do not constitute new evidence or establish sufficient doubt about Bell's guilt.

Bell also claims that trial witness Espinoza recanted his testimony and offers Espinoza's posttrial affidavit to demonstrate as much. In the affidavit, Espinoza states that he was present the night of the shooting and gave two different accounts of the events to police. Although Espinoza testified at trial that Bryant was the shooter, his affidavit now clarifies he did not actually witness the shooting. Bell argues this is new evidence and that Espinoza's recantation implies Peters, not Bell, was the shooter.

However, Bell does not connect the dots to explain how showing that Espinoza lied about Bryant somehow advances Bell's own innocence argument. He simply concludes that because Espinoza did not see Bryant shoot Judice, it had to be Peters. Not only is this argument illogical, especially in light of other evidence showing the presence of multiple shooters, but Espinoza testified during the trial and the jury was able to assess his credibility. In fact, Espinoza testified unequivocally that he did not see Bell outside during the confrontation and that Bell did not shoot Judice. Defense counsel even considered Espinoza's trial testimony to have favored Bell's case. Espinoza's recent recantation does not suggest a different outcome.

14

As for the affidavit provided to Bell by Brian Lee, who maintained he was present during the nightclub shooting and did not see Bell with a firearm but was never contacted to testify, aside from mentioning the affidavit, Bell does not explain how this information supports his actual innocence. In fact, the district court and a previous panel of this court thoroughly analyzed trial counsel's failure to call Lee as a witness at trial and found that "trial counsel made a sound strategic decision not to call [Lee] as a witness" in light of the conflict between his proposed testimony and the video evidence. *Bell,* 2015 WL 6832758, at *5. As noted by the prior panel, the State would have been able to impeach Lee's testimony easily, and "[s]trategic choices based on a thorough investigation of the law and facts are virtually unchallengeable." *Flynn v. State*, 281 Kan. 1154, 1157, 136 P.3d 909 (2006). Again, this does not establish the necessary doubt about Bell's guilt.

Finally, Bell proposes to present the evidence detailed here and the limited discovery sought through his separate motion to a forensic ballistics expert, Richard Ernest, who is reportedly "willing to perform a case review and re-examination of the ballistics evidence in support of the Petitioner's claim of actual [innocence]." But what Bell fails to do is explain how this proposed reconstruction of the crime scene would demonstrate with any certainty that he was not the shooter. Again, ballistics evidence, in the forms of a ballistics report and testimony by a firearm toolmark examiner, was presented to the jury at trial, and both forms of evidence were scrutinized by trial counsel. *Bell*, 2015 WL 6832758, at *9. And, in Bell's first K.S.A. 60-1507 motion, a panel of this court found no prejudice in counsel's failure to obtain a ballistics expert because Bell "failed to explain how an expert witness may have provided meaningful testimony." *Bell*, 2015 WL 6832758, at *9. Bell's current argument suffers the same deficiency.

On our review of the record, the evidence and witnesses Bell presents are neither new nor sufficiently reliable such that they cast any fresh substantial doubt on the evidence already presented at trial. There was plenty of uncertainty among the State's

15

witnesses during the trial about whether Bell was the shooter that delivered the fatal shot to Judice. Even defense counsel relied on equivocal testimony of the State's witnesses in forming the trial strategy to convince the jury that Bell was not the shooter. Nevertheless, the jury considered all the conflicting testimony during trial and the incomplete surveillance video clips from the night club, and still found Bell guilty. As an appellate court, we will not reweigh the evidence, assess the credibility of the witnesses, or resolve conflicting evidence. *State v. Cottrell*, 310 Kan. 150, 163, 445 P.3d 1132 (2019).

It is true our Supreme Court in *Beauclair* recognized there are occasions when new affidavits and evidence require the habeas court to hold an evidentiary hearing in order to resolve factually conflicting evidence. 308 Kan. at 302-03. In *Beauclair*, the movant presented 22 affidavits and declarations recanting the victim and others' accusations against him. Our Supreme Court found it is the district court's responsibility to hear live testimony on the actual innocence claims and weigh the conflicting evidence. 308 Kan. at 303. But here, although Bell tries to cast doubt on the trial evidence through affidavits and other evidence, what we are presented with is not truly *new* information, but the *reworking* of information previously presented—Bell's relatives' inconsistent and discredited statements; the impeachment of Banks, who was already impeached; Singleton's consistent inconsistency; and an unreasoned argument that Espinoza's untruth somehow points the finger away from Bell.

Our review shows an evidentiary hearing was not required to flesh out the evidence that, in most cases, was previously presented either to the jury or in the prior postconviction proceedings. The evidence offered in support of this second K.S.A. 60-1507 motion would not have left the jury with a reasonable doubt as to Bell's guilt. Therefore, Bell fails to establish an exceptional circumstance that defeats the procedural bar of his successive K.S.A. 60-1507 motion. As such, the district court did not err in

16

summarily dismissing Bell's K.S.A. 60-1507 motion as successive by finding that Bell failed to establish exceptional circumstances to overcome the procedural bar.

*Timeliness*

The other potential procedural bar to Bell's motion is its timeliness. The timeliness of Bell's K.S.A. 60-1507 claim is analyzed under K.S.A. 2020 Supp. 60-1507(f)(1). This statute, as applied to Bell's motion, stated:

"(f) *Time limitations*. (1) Any action under this section must be brought within one year of:
(A) The final order of the last appellate court in this state to exercise jurisdiction on a direct appeal or the termination of such appellate jurisdiction; or
(B) the denial of a petition for writ of certiorari to the United States supreme court or issuance of such court's final order following granting such petition. K.S.A. 2020 Supp. 60-1507(f)(1).

Under K.S.A. 2020 Supp. 60-1507(f)(2), the court may only extend these time limitations "to prevent a manifest injustice."

Although the district court did not reach the issue, both Bell and the State assume without in-depth discussion that the present K.S.A. 60-1507 motion was untimely. But we find it unnecessary to analyze the motion's timeliness. Because we find that Bell could not establish the exceptional circumstances to permit his successive K.S.A. 60-1507 motion, we need not consider its timing.

*Bell's ineffective assistance of counsel claims neither establish exceptional circumstances nor succeed on the merits.*

Bell also argues that in the alternative to his actual innocence claim, the ineffective assistance of his previous K.S.A. 60-1507 counsel and postconviction appellate counsel establishes exceptional circumstances that defeat any procedural bar. Specifically, Bell claims that his first K.S.A. 60-1507 counsel, Garcia, failed to amend the K.S.A. 60-1507 motion in accordance with pro se amendments filed by Bell and failed to raise such issues for the district court's review. Bell also argues his K.S.A. 60-1507 appellate counsel, Eddinger, failed to raise all issues on appeal and did not petition for review with the Kansas Supreme Court.

Both parties assume without specific discussion that Bell's current ineffective assistance of counsel claims are, in fact, successive, given that this is Bell's second K.S.A. 60-1507 motion. Because the separately successive nature of the ineffectiveness claims was not presented as a specific issue to the district court, we likewise do not decide it, despite that Bell's claims against his prior 60-1507 counsel and prior 60-1507 appellate counsel could not have been brought in his previous action. But this is of no import to our decision here, because whether Bell's ineffective assistance claims are determined through the lens of exceptional circumstances or on their merits, they must fail.

When the court reviews a potentially successive K.S.A. 60-1507 motion to determine whether the procedural hurdle applies, as noted above, exceptional circumstances can include ineffective assistance of counsel claims. *Dawson v. State*, 310 Kan. 26, 36-37 444 P.3d 974 (2019). "[A] movant has the burden of establishing exceptional circumstances to avoid an abuse-of-remedy dismissal of a second or successive 60-1507 motion." 310 Kan. at 36.

This burden to demonstrate exceptional circumstances requires a movant to establish the ineffectiveness of his counsel through the same lens required of a stand-alone ineffectiveness claim—the familiar two-prong *Strickland* test. See *Khalil-Alsalaami v. State*, 313 Kan. 472, 526, 486 P.3d 1216 (2021) (describing the test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 [1984], and adopted by our court in *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 [1985]).

To establish ineffective assistance of counsel, a movant must show that (1) counsel's performance, based upon the totality of the circumstances, was deficient in that it fell below an objective standard of reasonableness, and (2) the defendant was prejudiced to the extent that there is a reasonable probability that, but for counsel's deficient performance, the appeal would have been successful. *Khalil-Alsalaami*, 313 Kan. at 526.

Under the first prong, the movant must show that defense counsel's performance was deficient. If successful, the court moves to the second prong and determines whether there is a reasonable probability that, absent defense counsel's unprofessional errors, the result would have been different, based on the totality of the evidence. 313 Kan. at 485. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *State v. Sprague*, 303 Kan. 418, 426, 362 P.3d 828 (2015). A court hearing a claim of ineffective assistance of counsel must consider the totality of the evidence before the judge or jury. *Khalil-Alsalaami*, 313 Kan. 486.

Fatal to his claims is the fact that Bell presents only conclusory statements to support them. As to his claims against Garcia, Bell presents caselaw related to the amendment of pro se pleadings yet fails to apply that law to the facts at hand to adequately establish Garcia's alleged deficient performance. He merely states that Garcia

19

should have incorporated Bell's four untimely pro se amended petitions into a final amendment because the pleadings "may have given more details" and support for Bell's original claims. And, even if we were to assume Garcia's deficiency, Bell fails to sufficiently demonstrate prejudice resulting from the failure to amend. Bell blankly asserts that if the motion had been amended properly, then the conviction would have been reversed for a new trial and he would have been acquitted—without explaining how or why this would have been true.

Similarly, on appeal, Bell only asserts in a single paragraph what Eddinger did not do, yet neglects to explain how the deficient performance, if any, would have resulted in a different outcome. In his original K.S.A. 60-1507 motion, he claims, in a conclusory manner, that he suffered prejudice by Eddinger's failure, and had he been able to present the abandoned issues, it would have resulted in a new trial. But again, Bell provides no evidentiary support to show that, but for counsel's deficient performance, the appeal would have otherwise been successful.

As the movant, Bell bears the burden to establish the grounds for relief by a preponderance of the evidence. See Supreme Court Rule 183(g). To meet his burden, his contentions must be more than conclusory, and he must either set forth an evidentiary basis to support those contentions or the basis must be evident from the record. See *Thuko v. State*, 310 Kan. 74, 80, 444 P.3d 927 (2019). Bell does not present a sufficient claim in his motion to convince us, by the preponderance of the evidence, that he was entitled to relief and that an evidentiary hearing was necessary.

Whether we address Bell's ineffective assistance claims on their merits or as an exception to the bar of successiveness, they fail. And, even if the trial court may have relied on erroneous reasons, we will uphold its decision if it reached the correct result. *Gannon v. State*, 302 Kan. 739, 744, 357 P.3d 873 (2015). The district court correctly

20

found that the motion, files, and records of the case conclusively showed that Bell was not entitled to relief on his ineffective assistance of counsel claims.

*The district court's decision on the K.S.A. 60-1507 motion is affirmed.*

In sum, on our review of the record before us, the evidence offered in support of Bell's second K.S.A. 60-1507 motion would not have left the jury with reasonable doubt as to Bell's guilt. So, Bell does not demonstrate an exceptional circumstance that would allow him to file a successive K.S.A. 60-1507 motion. And, whether his ineffective assistance of counsel claims is decided as a procedural gateway or on the merits, his conclusory allegations do not demonstrate prejudicial error of his prior 60-1507 and postconviction appellate counsel. We find that Bell's claims did not warrant a substantive hearing by the district court, so the district court did not err by summarily denying Bell's K.S.A. 60-1507 motion.

## POSTCONVICTION DISCOVERY WAS NOT NECESSARY

Lastly, Bell claims that the district court abused its discretion by denying his motion for limited postconviction discovery. Bell argues that he needed the materials sought in his motion to support his claim of actual innocence, and his motion should have been granted for that limited purpose. The State contends that Bell's discovery request is just a fishing expedition because he essentially sought all the discovery from the original criminal case, although his original request was narrowed during the district court proceedings.

We review a district court's decision to grant or deny a request for postconviction discovery only for an abuse of discretion. *State v. Butler*, 315 Kan. 18, 20-21, 503 P.3d 239 (2022). The appellate court's "standard of review is well-established:  a district court abuses its discretion if no reasonable person could agree with its decision or if its exercise

of discretion is founded on a factual or legal error." *Butler*, 315 Kan. at 21 (citing *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 [2018]). The party asserting the district court abused its discretion bears the burden of showing such error. *Butler*, 315 Kan. at 21.

Kansas courts have discussed, without finality, whether defendants have a right to postconviction discovery. A panel of our court decided that "postconviction discovery should be allowed when the defendant shows that it is necessary to protect substantial rights." *State v. Mundo-Parra*, 58 Kan. App. 2d 17, 24, 462 P.3d 1211, *rev. denied* 312 Kan. 899 (2020). But more recently, our Supreme Court declined to decide the validity of that ruling neither endorsing the rule established in *Mundo-Parra* or abrogating it, finding the appeal "not ideally postured to address this larger question." *Butler*, 315 Kan. at 20.

But a definitive test for postconviction discovery is unnecessary under the circumstances of this case. Even assuming that Bell has a right to postconviction discovery, he has not sufficiently demonstrated his need for it. His initial motion broadly sought a "full copy of the discovery" provided to trial counsel; then he narrowed his request to focus primarily on a working copy of the surveillance video that he later admittedly accessed, as well as ballistics reports and crime scene reports provided to trial counsel. But Bell fails to sufficiently explain how the information he seeks is actually new information. The surveillance videos were examined by trial counsel, Bell, and the jury. His desire to furnish evidence to a ballistics expert is, without more, an attempt to reframe information previously presented, given the ballistics report and testimony by a firearm toolmark examiner presented at trial. See *Bell*, 2015 WL 6832758, at *9. Because Bell has not demonstrated the necessity of the requested discovery, we find the district court did not err in denying his motion for discovery.

Affirmed.